(80 South. 722)

No. 23162.

STATE v. LOUISIANA CYPRESS LUMBER CO.

(Jan. 6, 1919. Rehearing Denied Feb. 3, 1919.)

*(Syllabus by the Court.)*

1. PUBLIC LANDS ⊙⇒16—CUTTING TIMBER ON SCHOOL LANDS—CAUSE OF ACTION.

A cause of action is disclosed in a suit brought in the name of the state for the recovery of the value of timber, as manufactured into lumber, alleged to have been cut upon, and removed from, a school section, and so manufactured by a defendant, acting in bad faith and with full knowledge of the illegality and insufficiency of the title set up by him.

2. PUBLIC LANDS ⊙⇒16—CUTTING TIMBER ON SCHOOL LAND—ACTION BY STATE—STATUTE.

An action for the value of timber alleged to have been illegally cut upon and removed from a school section is properly brought, under Act No. 158 of 1910, by the district attorney of the parish whence the timber was removed, with the co-operation of special counsel employed by the board of directors of the public schools of the parish.

3. ESTOPPEL ⊙⇒62(5) — ESTOPPEL AGAINST STATE—UNAUTHORIZED ACTS OF OFFICERS.

The state is not estopped by the unauthorized acts of officers whose powers are defined and limited by law.

O'Niell, J., dissenting.

Appeal from Twenty-Eighth Judicial District Court, Parish of St. John the Baptist; John E. Fleury, Judge.

Action by the State of Louisiana against the Louisiana Cypress Lumber Company. Exceptions of no cause of action, want of authority of the district attorney and special attorneys to bring the suit, and of estoppel, sustained, and suit dismissed, and the State appeals. Reversed, and exceptions and plea overruled, and case remanded.

L. Robert Rivarde, Dist. Atty., of Hahnville, and Edrington & Edrington and W. B. Le Bourgeois, all of New Orleans, special counsel for the State.

Dart, Kernan & Dart, of New Orleans, for appellee.

MONROE, C. J. The state appears herein as plaintiff, represented by the district attorney for the Twenty-Eighth judicial district, and by Messrs. Edrington & Edrington, specially employed by the school board to act in conjunction with the said district attorney. The claim set up is for $105,000, as the value, in its manufactured state, of cypress timber alleged to have been cut and removed by defendant upon and from the sixteenth section in township 13 south, range 18 east, west of the Mississippi river, Southeast district of Louisiana, which township lies partly in the parish of St. James and partly in the parish of St. John the Baptist.

Defendant filed exceptions of no cause of action, want of authority in the district attorney and special attorneys to bring the suit, estoppel, and want of tender. The three exceptions first mentioned were sustained and the suit dismissed; the exception of want of tender (of the price paid by defendant for the timber) was overruled. The state, alone, has appealed, and the defendant has not answered the appeal. We have therefore to deal only with the three first-mentioned exceptions. The grounds relied on by defendant's counsel as sustaining those exceptions are stated in the syllabus of the brief filed by them substantially as follows: That Act 158 of 1910 does not authorize the district attorney and special counsel therein mentioned to sue to annul sales of standing timber, made by the authorization of the

auditor, pursuant to Act 168 of 1894; that, where a statute provides that the auditor may authorize a sale of timber on a sixteenth section, if, in his judgment, a sale should be made, and he exercises that judgment, and a sale is made by his authority, no action will lie against a third person who has become the purchaser; that, where the state, through its constituted department, has authorized such a sale, and has received the price, the sale cannot be annulled, in a suit brought under Act No. 158 of 1910, without a previous tender of the money so paid, and received by the state; that a suit cannot be instituted, under that act, against one who holds under title from the state, for the recovery of the value of the timber in its manufactured state, but can only be instituted for the recovery of its value, as timber, cut and removed under color of title; that, where one cuts and removes timber from a sixteenth section, under the authority of a deed executed in completion of a sale, at auction, ordered by the auditor, he is a possessor under color of title and not in bad faith, and a suit cannot be maintained for the value of timber, in its manufactured state, nine years after his purchase of such timber; that, where no charge of fraud is made against the purchaser, and the facts, as admitted, could not sustain such charge, if made, the highest evidence of the value of the timber, at the time and place where it was cut, would be the price realized at an auction sale, well and duly advertised for 30 days, and a suit to recover that, for informalities in the proceedings antedating the order of the auditor, would present merely a moot question, since the state would have suffered no injury.

The petition against which the exceptions are directed contains the following allegations and prayer (stated in substance) to wit:

That petitioner (the state of Louisiana) is trustee, for the benefit of the schools in township 13 south, range 18 east, west of the Mississippi river, Southeast district of Louisiana, of the land and timber thereon in section 16 of that township, which section is in place, contains 640 acres, more or less, and was acquired from the United States under the Act of Congress of March 3, 1811, c. 46, 2 Stat. 662. That on May 15, 1909, Eugene Dumez, as treasurer of the parish of St. John the Baptist, offered the cypress timber thereon to be advertised for sale at public auction, and, unlawfully and in contravention of that statute, adjudicated the same to defendant; that the sale was, and is, "void and of no effect, to the knowledge of the Louisiana Cypress Company, Limited, at the time and at all times since," for the reasons: That no legal sale of said timber could be made, without the consent of the inhabitants of the township, which was not asked or obtained. That no election was called by the school board of the parish of St. John the Baptist for the submission of the question to the legal voters and residents of the township. That the sale was made in violation of Act 129 of 1908 of this state, and in violation of certain (enumerated) acts of Congress, in that the said treasurer failed to cry out the property in quantities not less than 40, nor more than 160, acres, and adjudicated the entire section, of 640 acres, at one crying, to defendant, for $4,000 cash, though there were persons present who would have bid on smaller tracts and thereby have increased the aggregate of the amount realized. That, at the time of the sale in question (May 15, 1909), and for a number of years prior thereto, and since, a great number of legal voters and taxpayers have resided in the said township, in both the parish of St. James and St. John the Baptist. That, under the authority of Act 129 of 1908, the timber in question could only have been sold, legally, by taking the sense of those voters

upon the question, and that the statute was disregarded in the sale as made. That; acting under said pretended sale and title, "to their knowledge, insufficient and defective, the Louisiana Cypress Company, Limited, through its officers, employés, agents and servants, in bad faith, cut, deadened and removed from said section sixteen 3,000,000 feet of such timber, which it has illegally manufactured, converted to its own use, and disposed of." That the value of the same, in its manufactured state, is $35 per thousand feet, board measure, or a total of $105,-000, in which amount defendant is therefore indebted to petitioner. And judgment is prayed for accordingly.

On the hearing of the exceptions, certain documentary evidence was introduced in support, as we 'infer, of the exception of estoppel, since the exception of no cause of action is determinable on the face of the petition, that of want of authority, on the law relied on by plaintiff, and it is not pretended that plaintiff has made any tender of the money received for the timber. We shall therefore first consider, seriatim, the exceptions of no cause of action and lack of authority and then, if necessary, the plea of estoppel, in the light of the evidence.

[1] 1. The petition alleges that the sale of the timber was made without authority and in contravention, in specified particulars, of specified statutes, and that defendant, with knowledge of the insufficiency and defects of its title, in bad faith, cut, deadened, and removed it, and illegally manufactured it into lumber and converted the lumber to its own use—all of which allegations refer to timber which the state, as plaintiff, alleges that it held in trust for the public schools of the township heretofore designated, and, according to the jurisprudence of this court, disclose a cause of action· for the recovery of the value of the timber in its manufactured state, without deducting the manufacturing expenses. State v. F. B. Williams Cypress Co., 131 La. 70, 58 South. 1033, and authorities there cited.

[2] 2. In the case thus cited, it was argued (inter alia):

"That, under said act [meaning Act 158 of 1910, by the authority of which this suit, has been brought], the school boards are authorized to sue, and the state does not itself sue."

To which the opinion of the court replies:

"The act referred to does authorize the school boards to bring suits for damages resulting from trespass on sixteenth sections, * * * but it does so in the capacity of a ·principal authorizing an agent to sue in his behalf. The school boards are authorized to 'recover for the state' for trespass on lands 'the title to which is still in the state;' the attorneys employed by the school boards being required to 'work in conjunction' with the district attorneys in their respective parishes where the suits are brought, the suits being required to be brought in the name of the state, and each amount recovered * * * being required to be paid into the state treasury, 'to the credit of the township in which the land is situated, in the same manner as is now provided by law for the proceeds of the sale of such sixteenth sections.' We do not find that the act thus quoted changes the attitude or obligations of the state with respect to school lands, save in the respect, which is unimportant, that it contemplates that the school boards, which are nearer to and more directly interested in the sixteenth sections in their respective parishes, shall aid the state in the execution of her trust."

In the later case of Board of School Directors v. New Orleans Land Co., 138 La. 54 et seq., 70 South. 27, it was held, on the rehearing, that (quoting the syllabus):

"A parish board of school directors had no right of action to recover a sixteenth section or school section from one in possession as owner before the adoption of the Act 158 of 1910; and this statute expressly provides that the action shall be brought in the name of the state of Louisiana."

The suit was therefore dismissed because brought in the name and behalf of the school board and not in the name and behalf of the state.

[3] 3. It appears from the evidence (which is relied on to sustain the plea of estoppel) that on February 18, 1909, the then district attorney of the Twenty-Eighth judicial district wrote to the then Attorney General that the school board of the parish of St. John the Baptist (hereafter called St. John) desired to sell the timber on the sixteenth section school land (which timber is the subject of this controversy); that the entire section was within that parish, but that the township in which it is located was partly in St. John, and partly in St. James, parish; that R. S. § 2962, as amended by Act 129 of 1908, provided that, in such cases, the school board should call an election of the legal voters residing in the township "relative to the sale of the timber"; that an investigation showed that there was no one residing in 'that part of the township lying in St. John, though there were such residents in that part lying in St. James.

"Under those conditions," the letter reads, "can the school board of * * * St. John * * * authorize the superintendent and the president to apply to the auditor to sell said timber at public auction; * * * the money realized from the sale of said timber to be deposited with the State Treasurer, as was done in St. Charles parish case. The school board has secured from Mr. Jos. Rathbone, president of the Louisiana Cypress Lumber Company, a written agreement to bid a minimum of $2,-000.00 on this timber, if it is offered for sale as the law directs. This is the policy adopted in the matter of the timber of St. Charles parish. I wish you would kindly let me hear from you in this matter at your earliest convenience, and oblige," etc.

The Attorney General replied, under date February 20, 1909, in substance, that, reading Act 168 of 1894 with R. S. § 2966, he thought there could be no question as to the right to sell the land in the parish of St. John, through the auditor's office, provided a greater "portion of the sixteenth section lies in that parish"; but, if the dividing line between the two parishes "should throw an equal portion of the sixteenth section in each parish," it was his opinion:

"That the voters of the parish of St. James should authorize the sale of that part lying in St. James, and that a sale should be made of that portion in St. John under the provisions of Act 168 of 1894."

On March 4th following, the school board of the parish of St. John adopted certain preambles, reciting that an estimate had been made showing 1,042,000 feet of cypress timber on the sixteenth section, that defendant's president had agreed to bid $2,000 for it, if advertised and sold as the law directs; that in the opinion of the board it was to its best interest to make the sale, which preambles were followed by a resolution reading:

"Resolved: That the president and superintendent and secretary of the schools of this parish be, and they are hereby, authorized, empowered and instructed to apply to the state auditor for authority to advertise and sell the timber on said sixteenth section as the law directs."

On March 6th, Mr. A. C. Bernard, signing as superintendent, addressed a letter to the auditor, reciting the inclosure of a copy of the foregoing resolution and, under separate cover, of "all documents relative thereto," and requesting the auditor to take up the matter at his earliest convenience. To which letter, the auditor replied, under date March 10th, saying:

"Before this office can order the sale of timber on the sixteenth section, school land, the terms of Act 129 of 1908 must be fully complied with."

And adding, after the signature:

"If the sense of the inhabitants of the sixteenth section has been taken, the returns must be sent here, etc. I return, as requested, document 2."

The proces verbal of the parish treasurer contains the recital of a subsequent letter from the auditor (to the parish treasurer), of date March 23, 1909, saying:

"The law having been complied with, as provided for in section 1314 of Ray's Revised Statutes and Act 129 of 1908, you are hereby authorized to advertise and sell, according to the terms and conditions prescribed in section 1314 of said statutes, and under Act 129 of 1908, the timber on the school lands, to wit, the timber on the sixteenth section school lands in township 13 S., R. 18 E., situated in the parish of St. John the Baptist, and make returns to this office of the proceeds of said sale. Given under my signature," etc.

What further evidence was submitted that the law had been complied with than that to which we have referred does not appear. The proces verbal, however, further recites sections 1316, 1317, and 1321 of the Revised Statutes; declares that an order of sale was granted by the state upon the request of the board of school directors of the parish of St. John; that, pursuant to said order, the treasurer had advertised in the official journal of the parish, for 30 days, that he would sell, on May 15, 1909, at 12 m., "in quantities of 160 acres, the cypress timber on the sixteenth section, school lands, in township 13 south, range 18 east, situated in the parish of St. John the Baptist, cash on the spot"; that, while so advertising, the treasurer had caused the timber to be appraised (it being valued by the appraisers at $3,-000); and that, on the day mentioned, he "proceeded to sell  *  *  *  the cypress timber on the sixteenth section, school lands, *  *  *" to the Louisiana Cypress Company, limited, for $4,000, which was the last and highest bid, and thereupon executed a deed of sale for the same; and that he had, on that day (June 26, 1909), forwarded to the auditor $3,867, being the amount received, less certain charges and expenses, which are specified, including a commission of $100 for his services.

An examination of the law applicable to the subject discloses the fact that, prior to the enactment of Act 129 of 1908, there was no statute conferring specific authority to sell the timber standing on sixteenth sections, apart from the land itself, and that no other statute had been enacted prior to the sale here in question, from which it follows that the rights and obligations arising from that sale are to be determined in accordance with the provisions of that statute, the title and text of which (in so far as the latter is pertinent to the questions here presented) read as follows:

"An act to amend and re-enact section 2962 of the Revised Statutes of the state of Louisiana.

"Section 1. Be it enacted:  *  *  *  That section 2962 of the Revised Statutes of the state of Louisiana, be amended and re-enacted so as to read as follows":

[The second and third paragraphs provide that, "should a majority of the legal voters be against the sale of the lands," it shall be the duty of the board of school directors of the parish in which the lands are located, to secure them from injury and waste and prevent illegal possession and aggression, and to lease them in accordance with the provisions of the act of Congress of June 12, 1884; and there are provisions as to the manner and terms in and upon which the leases are to be made. The remaining paragraphs of section 1 and section 2 declare that:]

"The parish board of school directors shall have the authority, when in its judgment it is to the best interest of the schools in the township to take the sense of the legal voters residing in such township relative to the sale of the timber on sixteenth section school lands situated therein, or the lease or the sale of oil and mineral rights on such land.  *  *  *  If a majority of the votes are in favor of the sale of the timber,  *  *  *  the parish board of school directors shall at once report the result of the election to the state superintendent and the state auditor,  *  *  *  and upon the order of the state auditor the said board shall proceed to sell the timber.  *  *  *  In all cases of the lease of sixteenth section school land, or the sale of the timber thereon,  *  *  *  the cash payment, after deducting sufficient amount to cover the actual expenses incurred by the said election and making the said sale or lease, shall, at once [be] transmitted to the state auditor to be credited to the township in which the property is situated, as the law directs, and notice thereof shall be given the state superintendent.  *  *  *  In all cases where a sale of timber  *  *  *  is

made under the provisions of this act, the purchaser thereof, or his vendees, * * * shall be allowed a period of not more than ten years in which to remove the timber. * * *

"Sec. 2. * * * That all laws or parts of law in conflict with this act be and the same are hereby repealed." ·

It will be seen, therefore, that the authority conferred upon the board of school directors goes no further than "to empower that board to take the sense of the legal voters of the township," upon the question whether the timber on the school section of the township shall be sold, and that it is only in the event that a majority of the votes "cast by the legal voters of the township" are in favor of the sale, that any report is to be made to the auditor, that the auditor is authorized to order, or that the board is authorized to make, the sale. No authority, whatever, it will be observed, is conferred by the act on the parish treasurer, and therefore no authority to deduct a commission for an act which he was unauthorized to perform.

Act 168 of 1894, mentioned in the letter of the Attorney General, refers exclusively to the sale of sixteenth section lands, and provides that such lands, "located in a township not habitable, by reason of the land being swamps or sea marsh," may be sold by authority of the auditor upon the application of the school board of the parish in which the lands are located, and that, in such case, the sale shall be made by the parish treasurer.

Section 1314 of the Revised Statutes is identical with section 2958, and both vest in a majority of the inhabitants of the townships the right to determine whether the lands of the sixteenth sections shall be sold. Sections 1316, 1317, and 1321, are identical with sections 2960, 2961, and 2966, and they all relate exclusively to the sale of lands, neither timber nor mineral rights being mentioned. Sections 1321 and 2966 declare that:

"When the sixteenth section of any township is divided by a parish line, the treasurer of the parish in which a greater portion of the section may lie, shall proceed to take the sense of the people of the township, and to sell the same as provided by law, as if the whole section lay in his parish; provided, that the sale shall be advertised at the courthouses of both parishes as provided by law."

It is clear therefore so far as at present appears, that the proceedings culminating in the sale here in question were unauthorized and illegal from the beginning, and that those by whom they were conducted held no mandate therefor from the parties in interest, whether the people, the inhabitants, the voters of the township in which the timber that was sold was situated, or the state of Louisiana, since, whatever may be said of the land in the school sections, the timber, apart from the land, could not, legally, have been sold without the consent of a majority of the legal voters, residing, not in the parish where the timber may be situated, but in the township, obtained at an election called for that purpose, as required by Act 129 of 1908, and no such election was called or consent given, though the auditor called attention to that act and directed that the sale be made in accordance therewith; and (by inadvertence, as we take it) with R. S. § 1314, which section is wholly inapplicable.

That the state should be held estopped to undo the wrong which, through its unauthorized officers, has thus been done to its citizens, for whom it held the property in trust, is inconceivable, and particularly in view of the charge, not disproved on the trial of the exception, that defendant knew of the illegality of the transaction and took the timber in bad faith.

"But, it is urged [the Supreme Court of Alabama has said] that the state is estopped from claiming a correction of the mistake, because the relator," relying upon the acts, paid his money into the state treasury. "Estoppels against the state cannot be favored. It may

arise from its expressed grants (Magee v. Hallett, 22 Ala. 699), but cannot arise from the laches of its officers. * * * United States v. Kirkpatrick, 9 Wheat. 735 [6 L. Ed. 199]. All who deal with officers or agents of the government must inquire at their peril into the extent of their powers." State v. Brewer, 64 Ala. 287.

"It is a fundamental principle," says the Supreme Court of Indiana, "that a governmental corporation is not estopped by an act of an officer in cases where the act is beyond the scope of his [limited statutory] authority." Union School Township v. First Nat. Bank, 102 Ind. 464, 2 N. E. 194.

And to the same effect are the decisions in Pulaski County v. State, 42 Ark. 118; Hicken v. French, 70 Cal. 430, 11 Pac. 840; Slattery v. Heilperin, 110 La. 95, 96, 34 South. 139; Cordill v. Quaker Realty Co., 130 La. 939, 58 South. 819; United States v. Kirkpatrick, 9 Wheat. 735, 6 L. Ed. 199.

It is therefore ordered and adjudged that the judgment appealed from be annulled, that the exceptions and plea filed by defendant be overruled, and that the case be remanded to the district court to be there proceeded with according to law and to the views hereinabove expressed.

DAWKINS, J., takes no part.

See dissenting opinion of O'NIELL, J., 80 South. 727.