Relator, Mrs. Ernestine Golson, by mandamus, seeks to compel respondent, Winn Parish School Board, to reinstate her as a probationary teacher in the Winnfield Grammar School, and sues to recover money judgment for $885, payable monthly at the rate of $98.33, the salary she would have earned had she been allowed to teach during the 1941-42 school term. The suit is predicated upon the postulate that relator was employed by the school board to teach in said grammar school during the 1940-41 term at said salary and that without cause or compliance with the teacher tenure law (Act 58 of 1936) she was virtually dismissed when the board refused to re-employ her for the 1941-42 term.
Exceptions of no cause and no right of action were filed by respondent, argued and overruled. They are urged here.
The suit is resisted on the ground that relator at no time was employed by respondent to teach; has not enjoyed the status of probationary teacher within the meaning and intendment of the teacher tenure law, and, for these reasons, no ministerial duty rests upon respondent to provide her teacher employment.
The lower court sustained relator's position and from a judgment responsive thereto, respondent appealed. The appeal has been answered by relator. She alleges error with respect to the quantum of the money judgment in her favor.
We do not think the exceptions meritorious. They were filed in limine and adjudged from the contents of the petition. The petition specifically avers that relator was employed by respondent as teacher for the 1940-41 term; that she accepted the employment, taught and was paid the fixed salary therefor; that she possesses the required qualifications as a teacher of the grade assigned to her and was not discharged as a probationary teacher in the manner prescribed by law.
Under the plain provisions of Act 58 of 1936 the moment a qualified teacher is employed by a school board to teach in the public schools of a parish and pursuant thereto the teacher discharges the duties of such employment, he or she thereby becomes a probationary teacher and his or her dismissal may only be effected by strict compliance with the second paragraph of said act, which, so far as here pertinent, reads: "During said probationary term the parish school board may dismiss or discharge any probationary teacher upon the written recommendation, accompanied by the valid reasons therefor, of the superintendent of schools of that parish."
It is alleged that this mandatory requirement was not observed in relator's case. The exceptions were properly overruled.
The essential facts of the case are not in dispute. A question of law solely is tendered for decision. The larger part of the adduced testimony could have been dispensed with by an agreed statement of facts.
Relator, her husband and two small children for several years prior to the beginning of the 1940-41 school term lived in Delhi, Richland Parish. Prior to her marriage and for several years thereafter she taught in different parishes of the state but ceased to do so a short time prior to the birth of her children. She did not resume teaching until the beginning of the 1940-41 term. For this term she was employed by the school board of Richland Parish to teach a grade in the Delhi Grammar School, and at the opening of school she entered upon the discharge of her duties. About this time her husband's employment required that he move to Winnfield. He established residence there. Relator with the two children remained in Delhi. Soon thereafter relator and her husband interviewed Mr. D.E. Sikes, Parish Superintendent of Winn Parish, with regard to procuring employment for her, but were advised that all positions had been filled and no vacancies existed.
The fact that relator wished to teach in Winn Parish became known to Miss Myra Whitman, a grade teacher in the Winnfield school, and, coincidentally, she desired to teach in Delhi. She promptly wrote relator on the subject. A proposed exchange of the *Page 344 
teachers was discussed with the superintendents of the respective parishes and after satisfying himself concerning relator's qualifications, and discussing the matter with the principal of the Winnfield schools, Mr. Sikes consented to the exchange and authorized relator to take over the duties of Miss Whitman, which she did. Relator began teaching on November 16th and taught continuously until the end of that session in June following. She was paid the same salary as would have been paid to Miss Whitman.
It is certain Mr. Sikes did not consult the school board before allowing relator to teach and did not report to the board his action in the matter at the sessions thereof after November 16th. Excepting two members of the board from the ward wherein Winnfield is located, none of the eleven board members, including the president, knew that relator had taught in the school there until her desire to continue teaching was made known after the session had closed.
In January, 1941, Mr. Sikes was defeated for re-election as superintendent, hence, this controversy.
In view of the aforementioned uncontradicted facts, respondent contends that relator did not, from Sikes' unauthorized action, become an employee of the school board in whom, it is strenuously asserted, solely is vested the power to select, elect or employ teachers, and, perforce, did not acquire the status of probationary teacher.
The teacher tenure law, inter alia, declares that: "The word `teacher' as used in this section shall be construed to mean any employee of any parish school board who holds a teacher's certificate, and whose legal employment requires such teacher's certificate."
Counsel of both sides, in argument, informed the court that since this appeal was lodged, respondent and relator entered into a contract whereby relator was given a position as grade teacher in the Calvin School, twelve miles from Winnfield, at a salary equal to that she would have received in the Winnfield School for the 1941-42 session, and that she began teaching under this contract on March 10th. This being true, the demand for reinstatement has become moot. However, the demand for reinstatement and to recover salary depend for solution upon a determination of the same question: Was relator a probationary teacher when her application for employment was refused by respondent?
School boards of the several parishes are state agencies, created by the Legislature and invested with such powers as have been confided to them by the creating authority including, inter alia, that of selecting, employing and discharging teachers. Investiture of the mentioned power is specifically declared in Section 20 of Act 59 of 1936, and Section 49 of Act 100 of 1922. The pertinent portion of the 1936 Act reads as follows: "The parish school board shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent. The board shall have authority to employ teachers by the month or by the year, and to fix the salaries of the teachers * * *."
The pertinent part of the 1922 Act is as follows: "No person shall be appointed to teach without a written contract for the scholastic year in which the school is to be taught, and who shall not hold a certificate provided for by this Act of a grade sufficiently high to meet the requirements of the school * * *."
Therefore, to legally effect employment of a teacher the following requirements precedent must be observed, viz.: The school board makes the selection or election from nomination or nominations by the parish superintendent, or does so on its own initiative by majority vote; the superintendent satisfies himself as regards the qualifications of the teacher thus selected or elected, and this is followed by the execution of written contract by the teacher and the board through its president and secretary or other designated officials. Only one of these mandatory requirements was observed in the instant case. Mr. Sikes did investigate relator's qualifications to teach.
This court had before it in Lanier v. Catahoula Parish School Board, 154 So. 469, 470, a question similar to that involved herein, and in affirming judgment of the lower court rejecting the contentions of the plaintiffs, said and held:
"Therefore, we find that the parish school board has the exclusive right to appoint, select or elect, and employ by written contract *Page 345 
teachers for the public schools of their respective parishes. This authority cannot legally be delegated to any other body, person, or persons. A reading of the above-quoted sections of Act No. 100 of 1922 clearly shows that the parish school board, in order to employ a teacher in the public schools of the parish, must select, elect, or appoint said teacher and enter into a written contract to that effect. Until this is done, there is no employment. The act of employing teachers by said board is a discretionary one. It is not required to employ any particular person. The reason of said board for not employing any particular teacher is not subject to legal inquiry, and it cannot be forced by law to enter into a contract of employment with any particular person.
"There is no binding employment on the part of the school board or the teacher until the written contract between them is executed by both parties thereto."
In the case of Andrews v. Claiborne Parish School Board, 189 So. 355, 357, this court reaffirmed its pronouncements in the Lanier case and in passing on the questions therein tendered, said:
"The power to employ and discharge teachers has been confided by the Legislature solely to the School Boards of the several parishes of the state. Act No. 100 of 1922; Act No. 58 of 1936. The right to exercise this power may not be delegated. Lanier v. Catahoula Parish School Board, La.App., 154 So. 469.
"Therefore, the action of the superintendent in discharging plaintiff was wholly beyond the scope of his authority. It was of such character that ratification by the board, even if its action be construed as such, could not be productive of the same results which would surely follow positive action on its part. It would appear axiomatic that when the exercise of a power lodged in a political corporation by the creating authority is made so strictly personal as not to be delegable, the exercise thereof by any other person may not be made the subject of ratification or confirmation by such corporation. The converse, of course, is equally true. The test is: if a power is not delegable, its exercise by another may not be accorded legal vitality through ratification."
Therefore, since the power to select, employ and discharge teachers is a privilege and a power peculiar to a school board and may not be delegated, it unquestionably follows that the action of a superintendent in selecting and, so far as he is able, employing a teacher without the knowledge or consent of the board, is so palpably ultra vires as to create no obligation whatever as against the board, and this being true, certainly by no stretch of the imagination could such teacher enjoy the status of employee of the board.
In Brown v. St. Bernard Parish School Board, 14 La.App. 460, 131 So. 760, it was held that the defendant board had the right to terminate the employment of a teacher who had entered into a contract solely with the superintendent, and that the doctrine of estoppel urged against the board was untenable.
If it were legally possible for a superintendent to bind a school board as was attempted in the present case, it is not difficult to visualize the absurd and unthinkable consequences to which the practice could lead and the mischief thereby accomplished. To illustrate: a majority of the teachers in a given school might resign near the close of a scholastic session and their places be filled by selections of the superintendent without consulting or referring his actions to the board. In such a case, the board would find itself impotent to eliminate any of said selectees and their status would be that of probationary teachers. Surely the lawmaker never contemplated such absurdity and would not countenance a suggestion that such should be legally possible.
It is argued that since relator was paid her salary from funds disbursed by respondent, it is now estopped to gainsay that she was its employee. The point is not well taken. The board issued her no check on salary account nor did it pay her the salary directly. The method employed in paying the salaries of teachers, janitors, etc., was unique. At the end of each month the superintendent would make up a pay roll and prepare one check for the total amount. This check with the pay roll attached would be presented to the board's president and after being signed by him and the superintendent for the board, the amount of the check would be credited to an account in the payer bank in the superintendent's name. He would then draw checks against this account in favor of the persons listed on the pay roll. Naturally, the president did not look over the pay roll to determine who was listed thereon. No other member of the board had opportunity to do so. *Page 346 
Respondent, at its meeting on August 13, 1941, declined to re-employ several teachers for different reasons. Motion covering the board's action recites that relator and other named teachers were "not re-employed" for stated reasons. Relator's counsel argue that the language of this motion, particularly the use of the word "re-employed", carries with it a knowledge and an admission on respondent's part that relator was in fact and in law an employee of the board at that time. When all the attending facts are considered, this contention becomes untenable. These facts clearly disclose that she was not the board's employee and the motion is wholly impotent to alter this fixation. It is likely some of the dismissed teachers had taught under contract with the board and in inartfully drafting the motion no distinction was made between their status and relator's. It is also possible that the "employment" the writer of the motion had in mind was that effected by the deposed superintendent on his own responsibility.
For the reasons assigned, the judgment appealed from is reversed, annulled and set aside. Relator's demands are hereby rejected and her suit is dismissed at her cost.
DREW and HAMITER, JJ., concur.