Roy N. STAPP, Plaintiff-Appellant,

v.

AVOYELLES PARISH SCHOOL BOARD et al., Defendants-Appellees.

No. 75–1741.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1977.

George M. Strickler, Jr., New Orleans, La., Kidd & Katz, Stephen J. Katz, Monroe, La., for plaintiff-appellant.

Jeannette T. Knoll, Asst. Dist. Atty., 12th Judicial Dist., Parish of Avoyelles,. Marksville, La., for defendants-appellees.

Before BROWN, Chief Judge, and JONES and GOLDBERG, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case presents anew the frequently litigated question of a probationary employee's right to due process protection prior to dismissal. In this instance, the District Court ruled that whether the hearing it had previously ordered was sufficient under the requirements of the Due Process Clause should be presented first in the Louisiana Court System.[1] We vacate and remand so that the District Court may evaluate the due process protections under the procedures announced in *Ferguson v. Thomas*, 5 Cir., 1970, 430 F.2d 852, and its progeny.

On June 14, 1974, Roy N. Stapp (Principal) was informed by the Avoyelles Parish School Board (School Board) that his contract as the probationary, non-tenured principal[2] of Bunkie High School in Avoyelles Parish, Louisiana would not be renewed for a third year, the 1974–75 academic year. Earlier during his second year as principal of Bunkie High, Principal received a letter of intent from the Avoyelles Parish School Superintendent (Superintendent). This letter stated in part

"I am pleased to advise that your work as principal has been satisfactory and I shall recommend to the Avoyelles Parish School Board that you be re-employed for the 1974–75 school session."

Also included in the March 18, 1974 letter was a specific indication that if Principal demonstrated his intention to work for the Avoyelles Parish School System for the 1974–75 term, the Parish would consider him under contract and would only release him from his obligation for "urgent and unforeseeable circumstances." Principal appropriately conveyed his intention to continue as principal for the upcoming school year.[3]

After receipt of the letter of intent, a struggle over replacement of the Bunkie High School football coach (Coach) reached

1. See note 9, *infra*.

2. L.S.A.–R.S. 17:442 (1963) sets forth the manner by which a non-tenured teacher may be dismissed and how one attains permanent teacher or tenured status.

   § **442. Probation and tenure of parish or city school teachers**

   Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board, as the case may be, may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools, as the case may be, accompanied by valid reasons therefor.

   Any teacher found unsatisfactory by the parish or city school board, as the case may be, at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the school board of the parish or city, as the case may be, in which he has successfully served his three year probationary term; all teachers in the employ of any parish or city school board as of July 31, 1946 who hold proper certificates and who have served satisfactorily as teachers in that parish or city for more than three consecutive years, are declared to be regular and permanent teachers in the employ of the school board of that parish or city.

3. The brief submitted by counsel for School Board specifies School Board's action as failure to renew Principal's contract. Superintendent's letter of June 14, 1974, recommends that Principal be relieved of his duties as principal and dismissed as an employee of the school system. Because we remand this case, we only note certain distinctions created by the Louisiana statute regarding the ability of a teacher (or Principal) to be both tenured *and* non-tenured simultaneously. L.S.A.–R.S. 17–441 (1963) defines a teacher as

"Any employee of any parish or city school board who holds a teacher's certificate and whose legal employment requires such teacher's certificate".

As indicated in 2 above, one generally acquires tenured status after serving a three year probationary period. L.S.A.–R.S. 17:442 (1963). If a teacher achieves permanent or tenured status under § 442, he or she is then accorded the procedural protections under L.S.A.–R.S. 17–443 (Supp.1976).

### § 443. Removal of teachers; procedure; right to appeal

A. A permanent teacher shall not be removed from office except upon written and signed charges of wilful neglect of duty, or incompetency or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the State of Louisiana, and then only if found guilty after a hearing by the school board of the parish or city, as the case may be, which hearing may be private or public, at the option of the teacher. At least fifteen days in advance of the date of the hearing, the school board shall furnish the teacher with a copy of the written charges. The teacher shall have the right to appear before the board with witnesses in his behalf and with counsel of his selection, all of whom shall be heard by the board at the said hearing. Nothing herein contained shall impair the right of appeal to a court of competent jurisdiction.

B. If a permanent teacher is found guilty by a school board, after due and legal hearing as provided herein, or charges of wilful neglect of duty, or of incompetency, or dishonesty, or of being a member of or of contributing to any group, organization, movement or corporation that is by law or injunction prohibited from operating in the State of Louisiana, and ordered removed from office, or disciplined by the board, the teacher may, not more than one year from the date of the said finding, petition a court of competent jurisdiction for a full hearing to review the action of the school board, and the court shall have jurisdiction to affirm or reverse the action of the school board in the matter. If the finding of the school board is reversed by the court and the teacher is ordered reinstated and restored to duty, the teacher shall be entitled to full pay for any loss of time or salary he or she may have sustained by reason of the action of the said school board. If a teacher is not tenured, he or she may be dismissed under the Louisiana Teacher Tenure Act framework by a written recommendation from a superintendent to the school board with valid reasons. However no provision for a hearing is made. L.S.A.–R.S. 17–442 (1963).

As a further complication to the distinctions required by these sections, L.S.A.–R.S. 17:444 (Supp.1976) indicates that one promoted to a

higher position is untenured in that job until a similar three year probationary period is served. Section 444 clearly indicates that one who had tenure in the lower position does not lose tenure in that lower bracket because of a promotion.

### § 444. Promotions; probationary periods and tenure

Whenever a teacher who has acquired permanent status, as set forth in R.S. 17:442 and 17:443, in a parish or city school system is promoted by the employing school board by moving such teacher from a position of lower salary to one of higher salary, such teacher shall serve a probationary period of three years in the higher position before acquiring permanent status therein, but shall retain the permanent status acquired in the lower position from which he or she was promoted.

During the probationary period in the position to which promoted a teacher shall not be disciplined, removed or demoted to the lower position from which he or she was promoted except in compliance with the provisions of R.S. 17:442. At the expiration of the probationary period in the higher position, a teacher, unless removed or demoted in accordance with R.S. 17:442, shall automatically acquire permanent status in the higher position and thereafter may not be disciplined, removed or demoted from such higher position except in compliance with the provisions of R.S. 17:443.

Where a teacher has not completed the probationary period for teachers as required by R.S. 17:442, or for a particular promotional position as established herein, and is promoted to a higher position, the probationary period, either as a teacher or in the previous promotional position, shall continue to run and at the end of such three year probationary period the teacher shall automatically acquire permanent status in the previously held position until permanent status in the new position is acquired by compliance with the provisions of this Section.

From the perspective of this statutory scheme and the absence of any dispute over Principal's non-tenured status, no consideration is given to whether Principal may have had tenured status in a lower job category in the Avoyelles School System for purposes of outright dismissal from any and all positions within the school system. Also, the record before this Court is not sufficient to make such a determination.

As a result of the insufficient record and the absence of any dispute over whether Principal may have had tenure in one teacher classification and no tenure as a principal, we do not consider School Board's argument that Principal failed to exhaust his state remedies under L.S.A.–R.S. 17–443 (Supp.1976) for permanent teachers. Nor do we intimate any predisposition for or against the ability of such state created statutory appeal routes to preclude di-

its critical phase. Coach was fired by School Board without Principal's recommendation. When a local newspaper printed an article incorrectly listing Principal as one of those who had attended a meeting and supported dismissal of Coach, Principal contacted the paper, denied having attended such a meeting, and requested a retraction.

■ Approximately one month later on May 21, 1974, Principal was called to School Board President's office and asked to resign in the presence of Superintendent, a Supervisor of Curriculum and Instruction, and a School Board member. Because his requested retraction from the local newspaper was allegedly ". . . failure to keep his mouth shut and follow whatever direction he [the School Board President] choose", Principal contends that he was asked to resign and was later notified that he was discharged. Consequently, one of the reasons given by Principal as the basis of his dismissal entails a fundamental right protected by the First Amendment, free speech.[4] If this alleged reason should prove to be the basis of Principal's dismissal, the outcome of this case is clear. Such basic Constitutional rights are not shed as a prerequisite to continuation of a school related career. *Tinker v. Des Moines Independent Community School District*, 1968, 393 U.S.

503, 506, 507–14, 89 S.Ct. 733, 21 L.Ed.2d 731; *Pickering v. Board of Regents*, 1968, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811.[5]

Undeterred by his March 18, 1974 letter of intent, Superintendent prepared a written recommendation to School Board setting forth reasons Principal's contract should not be renewed[6] and for Principal's discharge as an employee of the School System. At a regularly scheduled School Board meeting on June 18, 1974, after *only* an assurance by Superintendent that the charges in his recommendation were or could be substantiated, the School Board adopted his recommendation and discharged Principal. It is important to note that although Principal was present at this meeting, he was never notified if, when, or where a hearing on his dismissal would occur.

■ On the same day Principal was discharged by School Board, he filed suit in the United States District Court for the Western District of Louisiana seeking declaratory, injunctive and other "appropriate equitable relief" against School Board, each member of the school board individually in their private and public capacities, and Superintendent in both his official and individual capacities. The District Court held an evidentiary hearing on the preliminary injunction relief and issued an order and rul-

---

rect suit in a federal forum when a cause of action otherwise arises under the Constitution, laws, or treaties of the United States.

We need only emphasize that School Board complied with 17:442 and that the subsequent hearing by School Board was pursuant to the order of the District Court to protect a property interest within the purview of the Fourteenth Amendment's procedural due process requirements yet outside any required hearing provisions of the Louisiana statute. Consequently, if the District Court determination that Principal is non-tenured is correct, Principal does not have to exhaust state review procedures when none were granted to him by L.S.A.–R.S. 17:442 (1963) as a probationary employee.

4. Principal alleges and argues a free speech violation of his First Amendment rights. On appeal no argument in his brief or before this Court was presented regarding any potential violation of his freedom of association right.

5. For an excellent, yet concise, presentation of school related but out-of-class teacher activities, see F. Schauer, School Books, Lesson Plans, and The Constitution, 78 W.Va.L.Rev. 287, 289–96 (1976).

6. A copy of the June 14, 1974, letter of recommendation to the School Board along with a cover letter was hand delivered by Superintendent to Principal. The letter to the School Board lists for general categories of reasons for Principal's dismissal with sixteen specific examples. The four categories are (1) lack of academic and administrative leadership, (2) lack of organized classroom teacher supervision as it relates to the instructional program, (3) failure to cooperate with the central office staff, school board members, or both, in the solution of problems and the placement of personnel, (4) failure to cooperate and foster good community-school relations with certain parents, business leaders and officers of service clubs.

ing on August 4, 1974, which concluded that it lacked subject matter jurisdiction over the school board and its members in their official capacity under 28 U.S.C. § 1343 because they are not "persons" within the ambit of 42 U.S.C. § 1983.[7] It did find jurisdiction under the federal question provision of 28 U.S.C. § 1331 because of the alleged violation of Fourteenth Amendment[8] and the necessary jurisdictional amount.

The District Court then concluded that as a probationary employee Principal normally would not be entitled to a full due process hearing under L.S.A.–R.S. 17:442. According to the District Court in this instance, however, the March 18, 1974 letter of intent created more than a unilateral expectation of re-employment. It created a property interest in re-employment which entitled Principal to a hearing under the principles enunciated in *Perry v. Sindermann*, 1972,

408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, and *Board of Regents v. Roth*, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. Determining that the June 18 School Board meeting failed to meet the minimal due process requirements, the District Court directed School Board within a reasonable time to hold such a hearing under the standards enunciated in *Ferguson v. Thomas*, 5 Cir., 1970, 430 F.2d 852 and its progeny along with Principal's reinstatement with back pay as principal of Bunkie High School in the interim.

In accordance with this mandate, School Board conducted a hearing and again discharged Principal. Because of alleged procedural and due process shortcomings, Principal requested the District Court to "adjourn" the hearing held by School Board and appoint a special master to conduct a proper hearing. This request was denied by a ruling issued on September 23, 1974.[9]

7. Because we vacate and remand this case to the District Court on other grounds discussed in the text *infra*, we pretermit discussion of certain issues which were presented to this Court by supplemental briefs and on oral argument. One already indicated in note 3, *supra* is whether school board remedies must be exhausted in a cause of action based on alleged violations of freedom of speech or press asserted directly under the Fourteenth Amendment. Others unnecessary in light of our holding in this case are (1) whether individual school board members may be named as defendants under 42 U.S.C. § 1983 if a school board is not a "person" under that section, and (2) whether federal jurisdiction and the relief available under the Fourteenth Amendment, enforced through 28 U.S.C. § 1331, is co-extensive with that of 42 U.S.C. § 1983, enforced through 28 U.S.C. § 1343. The present status of this Circuit regarding some of these problems including available remedies is indicated by our *en banc* opinion in *Muzquiz v. City of San Antonio et al.*, 5 Cir., 1976, 528 F.2d 499.

It suffices for jurisdictional purposes necessary before passing on the issues decided in this opinion that Principal has alleged a cause of action arising under the Constitution, laws, or treaties of the United States and the requisite amount in controversy. Although this Court's ruling in *Muzquiz, supra*, reinforced by *Bishop v. Wood*, 1976, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684, 689, n.1, precludes use of the Civil Rights Act of 1871 and its jurisdictional counterpart, 28 U.S.C. § 1343, for a suit

against a school board such as Avoyelles Parish, jurisdiction exists under the federal question provision, 28 U.S.C. § 1331. In analogous cases, this Circuit has found sufficient basis for exercise of our jurisdiction over school districts and state colleges under 28 U.S.C. § 1331. *Hander v. San Jacinto College*, 5 Cir., 1975, 522 F.2d 204, 205; *Roane v. Callisburg Independent School District*, 5 Cir., 1975, 511 F.2d 633, 635, n.1. Consequently, we find the principle of these cases applicable to Principal's. Cf. *Aldinger v. Howard*, 1976, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276, 280, n.3; see also *City of Kenosha v. Bruno*, 1973, 412 U.S. 507, 514, 516, 93 S.Ct. 2222, 37 L.Ed.2d 109.

8. The District Court's ruling of August 4, 1974 does not clearly indicate whether the Court based its ruling on only a property right due process basis independent of the First Amendment claim or on both.

9. The September 23 memorandum ruling made the following findings:

(1) There is no basis in due process for this Court to usurp or supervise the hearing conducted by the Avoyelles Parish School Board;

(2) That the Louisiana Legislature, in its wisdom, foresaw that a hearing conducted by the accusing body (the School Board), a nonjudicial board, might not in practice satisfy the full requirements of due process and provided for an appeal to the State District Court at which a full hearing or trial de novo would be conducted at which all the requirements of due process would be satisfied;

Principal then moved for a permanent injunction and declaratory relief alleging that his discharge violated his right to free speech and that he was not afforded adequate due process protection by the school board hearing. Without examination of any record of the hearing held by School Board and without conducting a hearing on Principal's motion, the District Court denied Principal's motion with a succinct and confusing "Plaintiff's Motion for a permanent injunction and for declaratory relief is hereby denied for the reasons set forth in this Court's ruling and order of August 1, 1974." [10] From this ruling Principal appeals.

■ Prior to any consideration of the sufficiency or necessity of procedural due process protections, Principal must demonstrate deprivation of an interest in "life, liberty, or property" within the protections of the Due Process Clause. Under the principles of the existing case law for a probationary, non-tenured employee with at most a unilateral expectation of continued employment, no question remains about the lack of any property interest in his or her continued employment which is shielded by procedural due process requirements. *Bishop v. Wood*, 1976, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684; *Sampson v. Murray*, 1974, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166; *Perry v. Sindermann*, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Board of Regents v. Roth*, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Burnley v. Thompson*, 5 Cir., 1975, 524 F.2d 1233, 1240; *Roane v. Callisburg Independent School District*, 5

Cir., 1975, 511 F.2d 633, 637–39. On the basis of the March 18 letter of intent which specified that upon Principal's communication of willingness to continue on as principal the School System would consider Principal under contract, and would release him only for "urgent and unforeseeable circumstances", we agree with the District Court's finding that Principal had a definable property interest in his re-employment.[11] The offer of continued employment in the letter coupled with the admitted reliance by School Board on Principal's affirmative response [12] and the expressed binding nature of such an acceptance falls into the class of property interests protected by the due process procedural requirements.[13] See *Roth, supra* at 576–77, 92 S.Ct. at 2708–09, 33 L.Ed.2d at 560–61; *Perry, supra* at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580; *Zimmerer v. Spencer*, 5 Cir., 1973, 485 F.2d 176, 177–78; *Sims v. Fox*, 5 Cir., 1975, 505 F.2d 857, 860–62.

■ Equally important in this case is recognition of the principle that except in singular instances a governmental agency may not discharge even a non-tenured employee because of his or her exercise of First Amendment rights. *Perry, supra* at 597, 92 S.Ct. at 2697, 33 L.Ed.2d at 577; *Roane, supra* at 640; *Kaprelian v. Texas Woman's University*, 5 Cir., 1975, 509 F.2d 133, 139. Realizing that any time freedom of speech arises as a significant basis of a cause of action a Court must proceed cautiously, we tread gently past this issue because of the insufficient procedures followed by the Dis-

(3) The decision of the State District Court is appealable to the Louisiana Courts of Appeal;
(4) Plaintiff's remedies under State law have not been exhausted.

**10.** Although the District Court refers to its August 4, 1974 ruling, the context of this case indicates it was actually referring to its September 23, 1974 ruling and order. See note 9, *supra.*

**11.** Superintendent testified that School Board relied on teachers' and principals' responses to

letters of intent in order to prepare student and teacher assignment ratios.

**12.** These factors indicate more than an abstract need or desire existed. More than a unilateral expectation was created. In fact, a mutual expectation was produced by actions initiated by School Board and Superintendent.

**13.** This property interest is for the then upcoming school year, 1974–75. Whether Principal may have a property interest for employment in another capacity under the existing Louisi-

trict Court and the state of the record before us on appeal.[14]

We recognize the emphasis by the dissent on the pre-*Roth* and *Sindermann* Louisiana cases [15] in which a teacher seeks through a direct suit on the alleged contract to be either reinstated or to receive a monetary award. This opinion does not deal with whether Principal is entitled to recovery or reinstatement on a contract claim. Rather, the issue is whether Principal had a non-subjective expectancy of continued employment. Once this threshold is created, both *Roth* and *Sindermann* instruct that minimal due process must be afforded Principal. This is the distinctive essence of our opin-

ana statutory framework is not now before this Court. See note 3, *supra.*

14. Of additional importance is the potential that the First Amendment claim may prove to be indecisive on remand once the District Court examines the record developed during the hearing held by School Board. This may occur if a valid, non-discriminatory ground is shown to have been the basis of discharge. *Ferguson, supra* at 858–59; see *Robison v. Wichita Falls & North Texas Community Action Corporation,* 5 Cir., 507 F.2d 245, 255; see text *infra.*

Furthermore, we are mindful of the Supreme Court's recent indication in *Wood v. Bishop, supra* at 350, 96 S.Ct. at 2080, 48 L.Ed.2d at 691, that

[i]n the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. Accord, *Megill v. Board of Regents of State of Florida,* 5 Cir., 1976, 541 F.2d 1073.

15. *State v. Winn Parish School Board,* La.App., 2 Cir., 1942, 9 So.2d 342; *Ritchie v. Ascension Parish School Board,* La.App., 1 Cir., 1941, 200 So. 681; *Bankston v. Tangipahoa Parish School Board,* La.App., 1 Cir., 1939, 190 So. 177; *Lanier v. Catahoula Parish School Board,* La.App., 2 Cir., 1934, 154 So. 469; *Brown v. St. Bernard Parish School Board,* Orleans, 1930, 14 La.App. 460, 131 So. 760.

We prefer to deal with these Louisiana cases on the substantive basis mentioned in the text. However, other distinctions exist. As mentioned, all of these cases are attempts to recover a monetary award or for reinstatement under an alleged contract. The limited viability of these cases is revealed by a factual dissimilarity. With the exception of *Brown* and *Lanier,* the school employee involved in the remaining cases could not have had probationary tenure status under the Louisiana statutory scheme. In this respect, these cases rely on the idea that the teacher *had never* been hired by the school board. In contrast, Principal *has been* a principal for at least the two immediately preceding years. Additionally, *Bankston, Richie,* and *Winn* rely on the *Lanier* case. In *Kennington v. Red River Parish School Board,* La.App., 2 Cir., 1940, 200 So. 514, the Court of Appeals of Louisiana recognized that a different issue arises in the context of a discharged or not rehired probationary employee versus an alleged teacher *never* validly hired by a school board. *Kennington* at 516–17. Also, *Lanier* and *Brown,* along with *Bankston* and *Richie* which rely on the *Lanier-Brown* rationale, arose before the Louisiana legislature implemented its recognition via the Teachers' Tenure Act, LSA–R.S. 17:441, *et seq.,* that because one may be discharged or not given another contract is not synonymous to having no due process protections. In fact while interpreting Louisiana's Teachers' Tenure Act, the Louisiana Supreme Court rejected the notion that the due process protections accorded probationary teachers under the Act require the existence of a contract for the succeeding year. See *State v. Bienville Parish School Board,* 1941, 198 La. 688, 4 So.2d 649, 651. Thus, even in Louisiana for probationary and permanent teachers, the existence of a contract with a school board for the future term is not a pre-requisite to the due process protections of the Teachers' Tenure Act. Although *Winn, Richie, Bankston, Lanier,* and *Brown* may be viable in the context of one *never* validly employed by a school board, they are not for one *already* employed as Principal.

Similarly, *Roth* and *Sindermann* require a reasonable, non-subjective expectation of re-employment—not an iron clad contract capable of enforcement. As the Supreme Court stated in *Sindermann* ". . . 'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' " *Sindermann, supra,* 408 U.S. at 602, 92 S.Ct. at 2699. Such an interest may arise in the form of a contract, implied contract, statute, or otherwise. However, we do not read *Roth, Sindermann* and their progeny to require that interest to be created exclusively by contract or statute. This is the assumption of the dissent: that a valid, enforceable contract for the next school year must exist before Principal is entitled to Constitutional due process protections. We do not construe *Roth, Sindermann,* and the later cases so narrowly.

ion. A non-subjective expectancy has been created.[16] We do not intimate nor consider whether Principal is entitled to win on any contract claim. The letter of intent from Superintendent to Principal created more than a subjective expectancy. It definitively indicated that upon Principal's conveyance of a formal acceptance in the proper manner, Principal would be considered under contract and released from his obligation only for "urgent and unforseeable circumstances."[17]

Two factors are certain. Principal possessed a property right necessitating a hearing and the District Court ordered School Board to afford Principal such a hearing. Coupled with this factor is this Circuit's determination that a preferred review procedure of such school board hearings be followed by the District Court. See *Robison, supra* at 254–56; *Thompson v. Madison County Board of Education*, 5 Cir., 1973, 476 F.2d 676, 679–80 (Clark, J., concurring specially); *Fluker v. Alabama State Board of Education*, 5 Cir., 1971, 441 F.2d 201, 208 n. 15; *Ferguson, supra* at 857–59.

■ Ordinarily the District Court is not expected to conduct a de novo hearing. Rather, the first inquiry is to *examine the record* of a school board's hearing to ascertain whether the *procedures* followed violated federal rights. In other words, did School Board conduct a hearing for Principal adequate by the procedural due process requirements of the Fourteenth Amendment? If so, then the record should be viewed to determine whether substantial evidence before the agency supports its action. *Robison, supra*; *Madison County Board of Education, supra*; *Ferguson, supra*.

Because a First Amendment claim is involved, the substantiality of evidence supporting School Board's discharge should be further classified to determine whether the District Court must decide the First Amendment claim and hold an evidentiary hearing on whether Principal's exercise of his speech rights was a significant basis for his discharge. In reviewing School Board's record, the reasons given for Principal's discharge may prove to be clearly insubstantial, substantial *and* sufficient, or substantial but insufficient. If the reasons are substantial and sufficient, the District Court need not consider or receive evidence on the First Amendment claim.[18] If clearly insubstantial, the District Court must consider and receive evidence on the First Amendment claim. Likewise, the Court must hear evidence on the First Amendment allegation for substantial but insufficient reasons.[19] *Robison, supra* at 255; *Ferguson, supra* at 858–59; see *Kaprelian, supra* at 139; *Madison County Board of Education, supra* at 679–80.

From the foregoing it is apparent that the District Court's initial duty is to examine the record of School Board's hearing held pursuant to its August 4, 1974 ruling. The record shows that the District Court issued its September 23, 1974 and its last ruling denying a permanent injunction request without ever examining the record of School Board's hearing for Principal. For this reason, this record is absent any facts

---

**16.** Our most recent opinion in *Megill v. Board of Regents of State of Florida, supra*, indicates an untenured teacher may acquire a reasonable expectation of continued employment.

**17.** Two added factors reinforce this view. At no time has School Board contended that Superintendent was acting without authority to make the representations made in Superintendent's letter—including the binding nature of Principal's acceptance. Also, after making the appropriate formal acceptance to School Board, Principal relied on this representation and made a down payment as earnest money for the purchase of a new home in Avoyelles Parish.

**18.** This assumes no allegation of unequal treatment or selective enforcement and the reason alone is sufficient to justify the dismissal or non-renewal. *Robison, supra* at 255; cf. *Madison County Board of Education, supra* at 679–80.

**19.** This does not necessitate the District Court's rehearing evidence presented at School Board's hearing on the First Amendment claim. The District Court may utilize such material along with other evidence presented during its hearing.

regarding what transpired during that hearing. The District Court's ruling is vacated and this case is remanded for reconsideration in light of the principles discussed in this opinion.

VACATED AND REMANDED.

JONES, Circuit Judge, dissenting:

The majority of the panel holds, if I rightly read its opinion, that the letter of intent from the Superintendent of the School Board to a principal created a property interest in re-employment of which he could not be divested without a Due Process hearing. This, I think, is wrong.

The majority agrees with the district court's conclusion that the:

"letter of intent created more than a unilateral expectation of re-employment. It created a property interest in re-employment which entitled Principal to a hearing under the principles enunciated in *Perry v. Sindermann*, 1972, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, and *Board of Regents v. Roth*, 1972, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548."

In *Perry* it was recognized that a teacher may, despite the lack of tenure or a formal contract, have a property interest in continued employment. This property interest could take the form of an implied contract arising from rules and understandings with the employer or from the circumstances and facts of the service. In *Perry,* such an implied contractual right to re-employment was created by Sindermann's reliance upon guidelines promulgated by the state university system and provisions that were present in a faculty guide. The court held that, in the absence of such a property interest, "a mere subjective expectancy" is not protected by procedural due process. In *Roth,* the court determined that the property interest entitling one to a Due Process hearing must consist of more than a "unilateral expectation" of re-employment, and that there must be a legitimate claim of entitlement to the interest. The court concluded that the teacher did not possess a legitimate claim to re-employment because there was no "state statute or University rule or policy that secured his interest in re-employment."

By these decisions it is made apparent that whether the peculiar facts of the particular case create an implied contract which requires a Due Process hearing for its termination is a question of state law.

The applicable statute of Louisiana provides for a procedure which, as in the *Roth* case, precludes the acquisition of a property interest in employment until a contract has been made as required by the statute. The Louisiana statute provides that the Parish School Board:

"shall determine the number of schools to be opened, the location of the school houses, the number of teachers to be employed, and select such teachers from nominations made by the parish superintendent, provided that a majority of the full membership of the board may elect teachers without the endorsement of the superintendent." LSA–R.S. 17:81.

The Louisiana courts are not unfamiliar with the requirement that contracts of employment of teachers cannot be made by a letter from the Superintendent without the action of the school board. The Louisiana Court of Appeals has said:

"this letter falls far short of constituting such a contract as is contemplated under the statute. In the first place, under section 20 of the Act, the School Board itself is charged with the selection of teachers, such selection to be made from nominations presented it by the Parish Superintendent. The Board itself has the authority to employ teachers either by the month or the year and to fix their salaries. Under Section 49 of the Act it is provided that no person shall be appointed to teach without a written contract for the scholastic year in which the school is to be taught, which contract is to be signed by the Superintendent. It is to be noted that the letter on which plaintiff relies is in the first place purely an offer of a position as plaintiff is therein specifically asked by the Superintendent to let him know if he will accept the

position tendered to him. In the second place there is absolutely nothing in the letter itself, nor in plaintiff's petition to indicate that the Superintendent was authorized by the School Board to make the offer therein contained." *Blankston v. Tangipahoa Parish School Board*, La. App., 1st Cir. 1939, 190 So. 177.

In *Richie v. Ascension Parish School Board*, La.App., 1st Cir. 1941, 200 So. 681, it was held that a letter from the parish superintendent to a teacher, requesting that she report for work, could not be construed into contract between the teacher and the board because there was no evidence that it was authorized by the board.

Not only is a letter from the parish superintendent insufficient to create a property interest in continued employment, but the parish superintendent is powerless to create, unilaterally, any right to employment. In *State v. Winn Parish School Board*, La. App., 2d Cir. 1942, 9 So.2d 342, the plaintiff maintained that she became an employee of the school board when the parish superintendent permitted her to teach in a parish school. The court determined that there was no employment contract prior to the execution of a contract between the teacher and the school board. The court said:

"Therefore, since the power to select, employ and discharge employees is a privilege and a power peculiar to a school board and may not be delegated, it unquestionably follows that the action of a superintendent in selecting and, so far as he is able, employing a teacher without the knowledge or consent of the board, is so palpably ultra vires as to create no obligation whatever as against the board, and this being true, certainly by no stretch of the imagination could such teacher enjoy the status of employee of the board."

The property interest, required by the *Perry* case, supra, may not arise through an estoppel against the school board. In the *Bankston* case, supra, and *Brown v. St. Bernard Parish School Board*, La.App., Orleans 1930, 131 So. 760, the court rejected plaintiffs' contentions and held that the

teacher selection processes, the actions of the superintendent in assigning teaching positions prior to the actual execution of a contract with the school board, and reliance upon the superintendent's nominations and letters did not estop the school board from denying the existence of an employment contract. The court stated that the school board is not bound by the acts of the parish superintendent. In *Brown* it is said that:

"a private corporation which by its conduct leads one to believe that an agent has authority is therefore estopped to deny that authority, but that rule does not apply to a public body or board the duties and powers of whose officers are fixed by law. Those who deal with such officers are bound to know the law with reference thereto. In *State v. La Cypress Lumber Company*, 144 La. 559, 80 So. 722, the court said: 'The state is not estopped by the unauthorized acts of officers whose powers are defined and limited by law'".

Employment may not arise through an estoppel against the school board, but only through the execution of contracts between the teacher and the board. *State v. Winn Parish School Board*, La.App., 2d Cir. 1942, 9 So.2d 342; *Richie v. Ascension School Board*, supra.

The appellant had nothing more than an expectancy. This does not create a right or consummate a contract. The Louisiana court has said:

"There is no binding employment on the part of the school board or the teacher until the written contract between them is executed by both parties thereto. Prior to the signing or execution of the contract, either the teacher or school board may withdraw from any former agreement without any reason and without liability on the part of either, for the reason that there is no binding contract or agreement until the written contract is executed." *Lanier v. Catahoula Parish School Board*, La.App., 2d Cir. 1934, 154 So. 469.

More might be said. Enough has been said. The principal had no tenure. He had

[redacted]

no property right, contractual or otherwise, to re-employment. His claim to the protection of the constitution must be based upon a right created by the Louisiana law. I can see no such right. The majority vacate and remand. I would reverse and remand with directions to enter judgment for the school board.