485 F.2d 176
 Ann M. ZIMMERER, Ph.D., etc., Plaintiff-Appellant-Cross Appellee,
v.
Thomas M. SPENCER, Individually, etc., and San Jacinto
Junior College District, et al.,
Defendants-Appellees-Cross Appellants.
 No. 72-2709.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 28, 1973.
Rehearing and Rehearing En Banc Denied Nov. 12, 1973.
 
 Larry Watts, Houston, Tex., W. Michael Gottesman, Washington, D. C., for appellant.
 Jeff Crane, Houston, Tex., Stanley Baskin, Pasadena, Tex., for appellees.
 Before TUTTLE, GODBOLD and MORGAN, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This is a teacher discharge case. The District Court found that Dr. Zimmerer, a teacher at San Jacinto Junior College, in Texas, was entitled to procedural due process because, though non-tenured, she had "an expectancy of reemployment under the policies and practices of the institution" (emphasis added). It found that the college Board of Regents had deprived her of procedural due process by refusing to renew her contract without sufficient notice of charges against her and without a sufficient hearing. Relief was granted in the form of the pay (and salary raise) that she would have received during the following year, plus attorney fees. Both sides have appealed. We are of the opinion that the District Judge correctly resolved the matter, and affirm.
 
 
 2
 The record adequately supports the finding that Dr. Zimmerer was not accorded procedural due process, and we agree with that finding. The Board insists, however, that the Supreme Court decision in Perry v. Sinderman, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), which was handed down after the District Court's decision in the present case, requires that this case be reversed. The argument misconceives both Perry and the trial court decision in the case before us. In Perry the Supreme Court held that a merely subjective expectancy of reemployment by a non-tenured teacher was not such an interest that the threatened loss of it was protected by the due process clause of the fourteenth amendment. It is at least arguable whether the prior "expectancy of employment" cases were ever wholly subjective. Certainly many of them embraced objective facts concerning prior actions and usages. Perry does not reject but rather requires analysis of such objective facts, discarding only the "mere subjective expectancy" of the teacher as the predicate for procedural due process. The Supreme Court recognized that the absence of an explicit written contractual provision did not always foreclose the possibility that the teacher had the necessary "property" interest in reemployment, arising from the employer's words and actions whose meaning would be found in the usage of the past. 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580.
 
 
 3
 A teacher, like the respondent, who has held his position for a number of years, might be able to show from the circumstances of this service-and from other relevant facts-that he has a legitimate claim of entitlement to job tenure. Just as this Court has found there to be a "common law of a particular industry or of a particular plant" that may supplement a collective-bargaining agreement, United Steelworkers v. Warrior & Gulf Co., 363 U.S. 574, 579, [80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409, 1415], so there may be an unwritten "common law" in a particular university that certain employees shall have the equivalent of tenure. This is particularly likely in a college or university, like Odessa Junior College, that has no explicit tenure system even for senior members of its faculty, but that nonetheless may have created such a system in practice. See Byse & Joughin, Tenure in American Higher Education 17-28.
 
 
 4
 408 U.S. at 602, 92 S.Ct. at 2700, 33 L. Ed.2d at 580. This concept of unwritten "property" interests is fleshed out by language in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), decided the same day. There the Court pointed out the necessity for giving meaning to the term "property" as used in the due process clause and noted that it had eschewed rigid or formalistic limitations on the protection of procedural due process. More specifically the Court said:
 
 
 5
 The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests-property interests-may take many forms.
 
 
 6
 408 U.S. at 576, 92 S.Ct. at 2708, 33 L. Ed.2d at 560. And, after describing various situations in which one may have a protectible interest in a benefit,[1] the Court continued:
 
 
 7
 Certain attributes of "property" interests protected by procedural due process emerge from these decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. . . . It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.
 
 
 8
 Id. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.
 
 
 9
 Dr. Zimmerer's case clearly falls within the "common law of the institution." Indeed, that is substantially what the District Judge said by his statement that Dr. Zimmerer's had an expectancy of reemployment "under the policies and practices of the institution." If at that time the Supreme Court's decision had been available the findings of fact might have been more precisely targeted, but the statement quoted, appearing after a description of the objective facts of institutional policies and practices, is more of a precursor of the Supreme Court in Perry than inconsistent with it.
 
 
 10
 Like the college in Perry, Dr. Zimmerer's college had no explicit tenure system even for its senior members. She had taught in the college for six years and had been department chairman for five. She was the senior member of the Psychology Department. Although faculty contracts were issued for only one year at the time, the Faculty Handbook contained a section entitled "Tenure" which stated that "Tenure is expected to be stable."
 
 
 11
 The term "tenure" in the handbook must be given some content and meaning short of formalized tenure, which did not exist at the college. The Board attempts no explanation of what the term means, nor does it claim that the presence of the provision in the handbook is an accident. Rather it says that Dr. Zimmerer's and the District Judge should not have placed so much reliance on what the handbook said. Also, under an established procedure, if the college decided that a teacher's contract was not to be annually renewed the teacher was placed on probation. This, the president explained, "is a way of telling them that unless the corrections were made that were thought to be necessary that at the end of the year the contract would not be renewed."
 
 
 12
 Thus the facts reexamined with the benefit of the Supreme Court's guidance support the existence of a protectible property interest.
 
 
 13
 This leaves the question of whether the relief granted by the District Court was correct. We think that it was.
 
 
 14
 In Perry the Supreme Court stated: Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency.
 
 
 15
 408 U.S. at 603, 92 S.Ct. at 2700, 33 L. Ed.2d at 580-581. In the present case the District Court, in its hearing, not only inquired into the issue of whether Dr. Zimmerer had a property interest but also went to the merits of the controversy between Dr. Zimmerer and the college and concluded that there were "valid non-discriminatory, constitutionally sufficient reasons for the Board's actions." Thus the court had gone past the point of remanding to the Board, as contemplated by Perry, to enable that body to inquire into the merits of the dispute. See also Ferguson v. Thomas, 430 F.2d 852 (CA5, 1970). The District Court recognized that remand to the Board would be useless because three years had elapsed since the original incident, because, as the court found, the Board's reasons for its actions were sufficient [which finding, of course, left little doubt what the result of a remand would be] and because the parties themselves recognized that their feelings were so deeply entrenched that remand was fruitless. Having vindicated Dr. Zimmerer's interest in having a full and fair hearing on the substantive merits of her discharge, as the Board should have done originally, and having found that the Board had valid reasons for discharging her, the Court was then faced with the question of the appropriate relief due Dr. Zimmerer for the delay in affording due process.[2]
 
 
 16
 Dr. Zimmer insists she is entitled to reinstatement at this time and until the Board gives her a hearing complying with due process, and back pay from the time of refusal to renew her contract. The Board suggests that under Perry the District Court could grant neither reinstatement (which it did not do) nor back pay but could order only a remand to the Board with directions to conduct a hearing complying with due process. We think neither extreme is required in this case.
 
 
 17
 In deciding upon remedy, the District Court considered the scope of Dr. Zimmerer's original protectible interest. In effect it found that the "constructive tenure" she had was for one-year's employment and that this was what she lost. This finding was supported by the existence of the procedure, described above, of putting an unsatisfactory teacher on probation for one year and then not renewing her contract for the succeeding year. An argument can be made that during a year of probation she might have rehabilitated the situation. But in view of the finding that the Board's reasons for its actions were valid, and the finding that the controversy was intractable and recognized by the parties to be such, we cannot say that the court was wrong in considering as a practical consequence that the most that Dr. Zimmerer lost was one year's pay. Under other circumstances different relief may be appropriate.
 
 
 18
 We have considered the argument that independently of the foregoing Dr. Zimmerer is entitled to a hearing at this time for the purpose of "clearing her name," because the Board's action is a deprivation of her liberty. Board of Regents v. Roth, supra; see also Moore v. Knowles, 482 F.2d 1069 [No. 71-3523, CA5, Aug. 2, 1973, opinion on rehearing]. The District Court correctly found that there had been no deprivation of liberty in the Roth case sense.
 
 
 19
 Affirmed.
 
 
 
 [1]
 Including a reference to a tenured teacher. Perry makes clear that the protectible tenure interest of the teacher is not limited to an arrangement formally incorporated into a written contract
 
 
 [2]
 If the court, rather than itself deciding the merits of the dispute, had remanded to the Board for it to discharge that function, the Board, as the initial body to consider potential remedies, would have had the duty to fashion relief