**W. R. SILER, Plaintiff,**

v.

**BRADY INDEPENDENT SCHOOL DIS-
TRICT et al., Defendants.**

**Civ. A. No. A-73-CA-75.**

United States District Court,
W. D. Texas,
Austin Division.

April 16, 1975.

Larry Watts, Walker, Strahan, Brunson & Watts, Houston, Tex., for plaintiff.

Emerson Banack, Jr., San Antonio, Tex., for defendants.

HAND, District Judge.

This matter came on for hearing before the Court without a jury. The parties having announced ready, having offered testimony and having presented arguments to the Court, the Court thereupon took this matter under submission. Based on the testimony, the arguments of counsel and the briefs submitted, the Court finds as follows:

## FINDINGS OF FACT

1. The action was instituted by the plaintiff claiming violation of his rights as provided by Title 42, § 1983 and Title 28, §§ 1331, 1343, 2201 and 2202, U.S.C., and the First and Fourteenth Amendments to the Constitution of the United States.

2. The parties in this cause of action are:

a. W. R. Siler, a resident of Salt Gap, Texas, and employed as a teacher;

b. The Brady Independent School District and Superintendent C. A. Reynolds, individually, and in his representative capacity; and

c. Ferd Slocum, Dr. A. M. McCulloh, Sam McCollum, Dr. M. D. McWilliams, Lamar Leifeste, Patsy Quinn and Dorothy Kyzar, members of the Board of Trustees of the Brady Independent School District, at all time material hereto, in their representative capacities.

3 Plaintiff was employed by the Melvin County Line Independent School District, at the commencement of the spring semester of the 1969–70 school year. He was again employed by Melvin for the years 1970–71 and 1971–72. In August of 1971, the Melvin County Line Independent School District was annexed by the Brady Independent School District.

4. On or about August 11, 1971, the Board of Trustees of the Brady Independent School District indicated to the Melvin County Line Independent School District authorities that the Melvin teachers would be employed for the coming school year by Brady and that Melvin teachers would be considered on the same basis as Brady teachers at contract renewal time.

5. Brady employed its teachers on an annual contract basis. There was no express tenure agreement, the Brady system not having any contractual tenure system for its teachers. The evidence showed that during orientation for the 1971–72 year, a time when the plaintiff was not shown to have been present, the Superintendent and others welcomed new teachers and generally expressed the hope that the teachers would find conditions of employment such that they would enjoy their stay with the school system, that they would find the community life such that they would fit therein, and that so long as "they did a good job" they could hope to be continued as members of the school family. The evidence reflects that the plaintiff never had any direct assurance of any such continued employment from any school official. The only evidence of his being directly advised of any policy of Brady was when he did appear before the Board of Trustees in May of 1972. The plaintiff, in fact, never signed any contract with Brady. In August of 1971, after the merger of the Melvin and Brady Districts, the plaintiff's Melvin contract was continued for the 1971–72 school year.

6. There is some basis in the testimony from which you might conclude that teachers in the system may have felt that they would be continued in their employment if they did a "good job", but as to the plaintiff, any reliance that he placed on this program of re-employment was not shown to be the result of any statement made to him or action taken by the Brady Board or the Superintendent directly with him.

7. The evidence does disclose, and indeed it was not seriously argued otherwise, that the practice of the administration of the Brady Independent School District did result in the re-employment of teachers on a continuing basis. Likewise those who had been employed in the system for some time did expect not to be discharged or to have their contracts renewed absent a showing of good cause or at least substantial cause therefor.

8. The shown practice of the Brady Independent School District was that in the spring of each year recommendations would be made to the Board through the office of the Superintendent for the employment of the teachers required for the coming year. The principals of the respective schools involved would make recommendations to the Superintendent as to the personnel in his or her school. Under the policies promulgated by the Board, classroom teachers would be elected at the regular meeting of the Board during the month of March of each year.

9. The principal of the high school where the plaintiff was employed as an algebra and related math teacher did not recommend to the Superintendent the re-employment of the plaintiff. The principal contended that he desired other and further opportunity to study the situation of the plaintiff's employment. The evidence demonstrates to the Court that the principal was an apparently small minded man with great personal ambition and this translated itself through the year in an inability of the plaintiff and the principal to get along as well together as they should. This condition, aided and abetted by the actions of the plaintiff himself, accounted for misunderstandings as to the method of grading, the method of student counseling, the method of counseling with parents, the conduct of the extra curricular activities, and the attendance of meetings called by the principal, etc.

10. When it came time to recommend teachers for re-employment for the coming year, the evidence leads to the conclusion that the principal could not overlook those things he considered as defalcations by the plaintiff, which by that time had no doubt translated themselves into realities to the principal. The principal apparently intended to "hedge his bet", though, by delaying his decision until it could be determined that someone could be found with whom plaintiff could be replaced. This decision was one with which the plaintiff was not willing to abide. Such conclusion becomes more obvious from the fact that another employee who likewise had been transferred from the Melvin system was not initially considered for re-employment though subsequently he was when no apparent substitute could be found.

11. The plaintiff, not being satisfied to let the matter die in this vein, requested the privilege of appearing before the school board in order to state his position. The school board accorded the plaintiff this privilege and on May 8th he did appear and did state his case to the board. It must be noted at this juncture that no formal statements in writing had been given the plaintiff as to why he was not being re-employed though plaintiff had had discussions along this line with the principal of his high school and had received, in essence, the gist of the considerations, at least insofar as the principal was concerned. During this hearing with the school board the plaintiff was given his opportunity to state his case. He was then dismissed from the room and the principal was invited into the meeting at which time he stated his reasonings and was permitted to document them. It was agreed by the litigants after the trial that this hearing did not comport with the requirements of Ferguson v. Thomas, 430 F.2d 852 at 856, (Court of Appeals, Fifth Circuit, 1970), in regard to rudiments of due process.

12. Plaintiff's exhibit 22 is a copy of the notes prepared by the plaintiff, Siler, and read to the board at the time of the requested hearing on May 8th. Plaintiff's exhibit 15 is a copy of the

letter from the board to the plaintiff, W. R. Siler, dated May 9, 1972 in which the board set forth its reasons for failure to reconsider its decision not to renew Mr. Siler's contract.

13. There is no question that the plaintiff had any express contractual right to re-employment. The theory advanced, and for which evidence was offered, was to establish a de facto tenure system that would accord the plaintiff the reasonable right to expect re-employment. The parties agree that the Brady system did not adopt the continuing contract program found in sections 13.101–13.107 of the Texas Education Code, Ann. (1972). Under this program statutory tenure would have affixed after employment by the district for three years.

### PLAINTIFF'S PROPOSITION

The plaintiff's contention was that his Fourteenth Amendment rights had been violated in that he had acquired a property right founded on the reasonable expectancy of re-employment in his job as teacher in the Brady system and that he was deprived of that right without the rudiments of a due process hearing. Though not directly presented to the Court as a viable issue, allusion was had from time to time to the deprivation of liberty in the failure to grant the rudiments of a due process hearing.

Plaintiff's theory was that by virtue of the past actions of the school board in, the manner in which they had handled the employment of their teachers and by reason of the statement made by the Brady Board to the Melvin Board, as set forth in plaintiff's exhibit 7, the plaintiff, and all other teachers, had a reason to expect to be re-employed so long as they did a good job and were happy in the system.

It was philosophically argued that it would have been so simple for the Brady Board to have accorded the plaintiff his fundamental rights to fair treatment by having it state to him the charges levied against him in sufficient detail to enable him to show any error that might have existed in connection therewith, that his accusors names be made known to him, and that he be accorded a meaningful opportunity to be heard in his own defense before a tribunal that was impartial towards the charges. After all, the parties were all adults and the mature thing to do was approach a problem of this nature with mature judgment. This, it was contended, was not done.

It is true that all involved were adults. It is also true that there is no reason why adults ought not to consider matters of this nature from a mature standpoint. It is not true, however, that procedures of this nature are conducted in vacuums, devoid of any degree of emotionalism, and that personalities do not enter into and influence ultimate decisions. Any appeal to concepts of fundamental fairness make telling arguments, and were these only as stated by the plaintiff and thus the only considerations involved in resolving the issues, the problem of this Court would be considerably simplified.

The defendants have a side, too.

### DEFENDANTS' POSITION

The defense contended that plaintiff had no tenure right, either by operation of law, contract nor by common law right of the shop. At best plaintiff had a mere subjective expectancy and even if there was a "shop right" it had not vested. In addition, plaintiff knew why he was not retained and had failed in his burden of convincing the Board he should have been.

### CONCLUSIONS OF LAW

1. The Court has considered the recent Supreme Court decisions in Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548, and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, together with Connell v. Higginbotham et al., 403 U.S. 207, 91 S. Ct. 1772, 29 L.Ed.2d 418; Fluker v. Alabama State Board of Education, 441 F. 2d 201 (5th Cir. 1971); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970),

and Zimmerer v. Spencer, 485 F.2d 176 (5th Cir. 1973) as they apply to this case. The Court has also recently received, and considered, the opinion in La Borde v. Franklin Parish School Board et al., 510 F.2d 590 (Ct. of Appeals, 5th Cir. 1975).

2. One of the first considerations is the question of whether the plaintiff has established a property right in his job.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it, he must have more than an unilateral expectation of it, he must, instead, have a legitimate claim to it * * * ".

* * * * * *

"Property interests, of course, were not created by the Constitution. Rather they were created and their dimensions were defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits * * * ". See *Roth*, supra.

3. It has likewise been held that the Constitution does not require an opportunity for a hearing before the non-renewal of a non-tenure contract unless the claiming party can show that the decision not to rehire him deprived him of some property right therein despite the lack of formal contract or tenure, but the mere showing that he was not rehired, without more, does not amount to a showing of a loss of either liberty or property.

4. Where the plaintiff alleges that the school had a de facto tenure program it is incumbent upon the teacher to show some basis for such a conclusion such as, a long period of tenure, guidelines promulgated by the board leading to this conclusion, statements modifying the express terms of a contract made by those in authority to do so, and mutually explicit understandings that support the claim. A mere subjective expectancy will not suffice. See Perry v. Sindermann, supra.

5. Plaintiff Siler never signed a contract with the Brady system. His contract was adopted by the Brady system on the occasion of the merger of the Brady and Melvin districts. Plaintiff Siler had been employed by Melvin since January of 1970 and had had his contract renewed by Melvin for the 1970–71 school year and the 1971–72 school year. It was this latter contract that was adopted by Brady. Both the Melvin contracts and the Brady contracts provided for a one year term of employment and neither made any express mention of any renewal thereof. At the commencement of the 1971–72 school year Brady's Superintendent and several members of the board met in an orientation session with the teachers that had been employed for that academic year at which time they were welcomed to the system. It is contended that at this meeting these officials announced to the teachers, among other things, that if they did a good job they could remain in the Brady system as happy members of the family so long as they desired to do so. The plaintiff was not there. At no time was there any conversation by the Superintendent of the Brady system or any members of its board with the plaintiff in regard to the question of tenure or the reasonable right of expectancy of re-employment. If the plaintiff came by any understanding that he might have a right of expectancy of re-employment it did not come from any official source, so the evidence reflects, until the occasion of the plaintiff's appearance before the board in regard to the reconsideration of their determination not to renew his employment on the night of May 8, 1972. Does this constitute more than a unilateral determination of a right or a mere subjective expectancy acquired by the plaintiff?

6. Unlike *Zimmerer* and *Perry*, supra, Mr. Siler was in his second full year of academic employment when the

decision was reached by the principal not to recommend him for re-employment. It is to be noted that Mr. Siler had been a teacher in other systems but the employment had not been continuous when he was employed by Melvin. There is nothing before the Court to show how long the time gap was or what the terms of employment were in those other systems.

■ 7. In its memorandum to the members of the board of trustees of the Melvin County Line Independent School District the Brady Independent School District (plaintiff's exhibit 7) advised, "We would consider ourselves bound by the terms of your classroom teachers contracts and such teachers would be assigned teaching duties in the Brady school system commensurate with the orderly placement of personnel by school administrators. At contract renewal time, these teachers would be considered upon merit in exactly the same manner as is now in effect in our system for consideration of our present teachers." The plaintiff had no direct communication with any authority in the Brady system that would permit him to draw the conclusion that this referred to any tenure rights. The only basis shown by the evidence from which the plaintiff might have so concluded would be the results of his conversations with other teachers, and the Court, from the evidence and the observation of the demeanor and deportment of the witnesses so testifying, cannot clearly conclude that the evidence preponderates in favor of the plaintiff's contentions on this point.

■ 8. Not having had a lengthy relationship with the school board and it being shown that the evidence is not conclusive on any mutuality of understanding on the point, what other independent source can we go to to determine the issue of an expectancy of tenure? Mr. Chief Justice Burger suggests in his separate concurring opinion in *Perry* and *Roth,* supra, that we must look to State law. Apparently Texas,

like a number of other states, has determined that a three year probationary period is not unreasonable before a teacher can acquire tenure. Indeed, some have held that seven years is not unreasonable. (See *Roth* and Texas Education Code, supra.) Like a statute of limitations, this might be considered an arbitrary determination of time. However, if the educators in Texas feel that educational institutions should be given a minimum of three years in which to pass judgment on the quality of their teaching personnel, it ill behooves the Court to substitute its judgment because it may have some feeling that such limit of time is unreasonable or unnecessarily arbitrary.

9. Considered in this light, and though the Court may personally feel that the plaintiff may be suffering a non-renewal of his contract in part due to personality conflicts and childish reactions, the Court's better judgment holds from the facts that the plaintiff had not, in this instance, acquired a property right in the reasonable expectancy of re-employment and was thus not entitled to due process.

10. The "shop right" consideration, a figment of the law derived from observing the experiences of others in dealing with related matters, here employment in industry, etc., has been recognized as creating a tenure right in school employment cases. If one observed the length of time that it takes various learning trades to pass from the apprentice stage to the journeyman stage, one cannot say that three years is an arbitrarily too short period of time for the educational profession. A general consideration among the trades today seems to be that it requires approximately 8,000 hours in any given apprentice program.

■ 11. Not only does this Court conclude that the foregoing would be dispositive of the issue, but we have the further consideration of whether or not the plaintiff was in fact given the rudiments of a due process hearing. *Ferguson,* supra. Though counsel may have

stated at the time and in the heat of the trial that they did not feel that was accorded to the plaintiff, the hearing met the rudiments of due process, and the Court is of the opinion that it would suffice. There is no question that the plaintiff knew at some point what it was that the principal of his high school felt were his shortcomings and the reasons that the principal was not going to recommend to the Superintendent his reemployment. It might have taken considerable effort on the part of the plaintiff to extract this information from the principal, the principal not appearing to the Court to be a man of broadminded outlook or straight forwardness in response to questioning of his reasonings, but he did acquire it, did catalogue it, and did set it out in memorandum form, all as appears in plaintiff's exhibit 22. The plaintiff requested of the Board that he be permitted to appear before them in an attempt to persuade them to reconsider their position, because he felt that the Board's decision might have been based on incorrect information and on misrepresentations by his principal. The Board granted this opportunity to the plaintiff and he did in fact appear and did offer a rather full and complete explanation of his side of the controversy. The principal was granted a similar right and the only thing that can be said that the plaintiff was not granted was the right to be confronted at that meeting by his supposed accusor and the right to cross-examine. Ferguson v. Thomas, supra, does not seem to require this latter right and as the Court reads *Ferguson*, though the hearing might have been better organized or more perfect in its judicial nature, the rudiments of due process were there.

12. The next consideration of the Court is whether or not any deprivation of liberty has resulted. The Court alluded to this even though it was not directly presented to the Court, for the question of the plaintiff's reputation and good name might be said to have been impugned by the findings of the Board for the reasons advanced above.

The Court considers this proposition disposed of by the finding of no property right, and though this Court may not have arrived at the same conclusion as did the Board on the issues of deprivation of liberty or property, the Court cannot say that the findings by the Board were arbitrary or capricious. See Fluker v. Alabama State Board of Education, supra, and Johnson v. Branch, 364 F.2d 177 (4th Cir.)

13. There being insufficient evidence on which to find that the plaintiff had a property right in his expectancy of reemployment he was not entitled to the rudiments of due process though this Court is of the opinion that he was nevertheless given this privilege. The Court is constrained to have to rule under the law that the plaintiff has not demonstrated any right to recover in this cause and judgment is to be entered accordingly.