MR. CHIEF JUSTICE PRINGLE
delivered the opinion of the Court.
There are two issues presented by this appeal. The first is whether the plaintiff had such a property interest in continued employ *364 ment as a faculty member with the Colorado School of Mines, so as to require that institution to afford him a full hearing before it determined not to renew his contract for the ensuing academic year. Secondly, it is asserted that the circumstances surrounding plaintiffs nonretention at the school acted to deprive plaintiff of an interest in liberty without due process of law. The district court held that the plaintiff had no property right with respect to continued employment and was not deprived of any interest in liberty by the decision not to renew his employment contract. We now affirm.
1.
Plaintiff was a member of the Colorado School of Mines Mathematics Department faculty from September 1953, through the end of the 1970-71 school year, a period of eighteen consecutive years on successive one-year contracts. His initial appointment was at the rank of instructor, which position he held for eight years until September 1961. At that time he was appointed to the rank of assistant professor. He remained in the latter position throughout the duration of his association with the Mathematics Department.
At the time of his hiring, plaintiff was aware that he suffered from a disease of the eyes which was expected to cause gradual deterioration of his eyesight and which had, in fact, already resulted in some loss of eyesight. These facts plaintiff made known to the school prior to being offered employment in 1953.
From 1964 to 1969, the subject of plaintiffs loss of vision was discussed, verbally and in writing, among and between plaintiff and members of the school administration. In particular, certain adverse effects on plaintiffs teaching ability were noted. Plaintiff was continued on a series of one-year contracts, however, until April 1969 when he was notified that the contract for 1969-70 would be his last; there was testimony to the effect that this was a “probationary” contract. The Board of Trustees subsequently reconsidered and offered plaintiff a contract for 1970-71. Plaintiff was not given a formal hearing either before or after this decision of the Board of Trustees.
In April 1971, plaintiff was notified that he would not receive a contract for the next academic year and, after some correspondence between the plaintiff and defendants regarding the propriety of this action, plaintiff, in August 1971, requested a hearing before the Board of Trustees. This request was denied.
During plaintiffs employment with the school there was no de jure tenure system for any members of the faculty. The faculty handbook, however, sets out specified periods of time at a particular teaching level within which faculty members were expected to advance and also states that faculty members would not be given preference for academic leave prior to the completion of a set period of service.
*365 Plaintiff originally brought this action in the United States District Court pursuant to 42 U.S.C. §1983 (1970). The District Court determined, however, that the issues which we defined at the outset of this opinion were matters governed by state law, and it, therefore, abstained until those issues could be resolved by the state courts. Following the decision of the state district court, the matter was appealed to the court of appeals. We thereafter accepted jurisdiction under C.A.R. 50.
II.
In Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court held that certain due process requirements apply to actions of public colleges declining to rehire instructional personnel where the instructor has a “legitimate claim of entitlement” to continued employment. Those cases indicate that such a claim or property interest may be established in a number of ways. Specifically, plaintiff seeks to rely upon the theories of “de facto tenure,” “implied promise,” “common law of the institution,” and ‘-estoppel” — all of which are theories expounded in various cases sine Sindermann and Roth, supra. See, e.g., Zimmerer v. Spencer, 485 F.2d 176 (5th Cir. 1973); Ferguson v. Thomas, 430 F.2d 852 (5th Cir. 1970). With respect to the concept of de facto tenure, plaintiff contends that the absence of a de jure system of tenure at the school,[1] when combined with the length of his service, the probationary nature of his contract for the 1969-70 academic year, and the provisions of the faculty handbook regarding time and grade[2] can lead to no other possible conclusion than that a de facto tenure system existed at the school. We are not persuaded. There is ample evidence in the record to support the finding of the trial court that there was nó de facto tenure system.
The provisions of the faculty handbook cited by plaintiff are certainly not a written assurance of job permanence. If the prescription of a specified rate of advancement in rank has any significance for job longevity, it must be that a person who fails to progress in rank as the school expects he should, has a very tenuous employment indeed. Thus, the handbook provision in reality serves to emphasize that the school had no system of assured job tenure at all. Moreover, we decline to hold that longevity of employment per se, without additional supportive facts, creates a protect- *366 able interest to the individual. See, Cannady v. Person County Board of Education, 375 F.Supp. 689 (M.D.N.C. 1974).
Contrary to plaintiffs assertion, Johnson v. Fraley, 470 F.2d 179 (4th Cir. 1972), does not hold that prolonged continuous employment necessarily amounts to the equivalent of tenure; it holds only that it “can” create a tenure right. The fact that Fraley was remanded for full trial on the complaint demonstrates that the court well understood that whether a factor which “can” support such a conclusion, in the abstract, actually “does” support such a conclusion in a particular case, necessarily depends upon the effect of the other material facts in the case.
Finally, it is unclear what inference plaintiff wishes this court to draw from the probationary nature of his contract for the 1969-70 academic year. This characterization of plaintiffs contract is ambiguous at best. While plaintiff may conclude that it demonstrates some expectation on the part of the school that he would normally be reemployed, it is just as easy to infer, in the context of this case, that the school merely wished to emphasize the rather insecure position which plaintiff occupied. Thus, on these facts we cannot find that, as a matter of law, a de facto tenure system existed at the Colorado School of Mines during the period relevant to this case.
As to the plaintiffs other contentions, the courts have often melded the theories of “implied promise,” “common law of the institution,” and “estoppel” in dealing with the question of a property interest in continued reemployment. Plaintiff seeks to rely on a number of federal cases indicating those factors which courts have considered in this area. In Zimmerer v. Spencer, supra, for example, the Fifth Circuit Court of Appeals affirmed the district court’s ruling that the plaintiff was entitled to procedural due process because, though nontenured, she had “an expectancy of reemployment under the policies and practices of the institution." Zimmerer v. Spencer, supra at 177 (emphasis added). However, in that case the faculty handbook specifically contained a section on “tenure” which stated that “tenure is expected to be stable.” As previously indicated, in the case at bar the faculty handbook had no provision on tenure. Moreover, except for the provision of the faculty handbook previously discussed {see fn.2), plaintiff is unable to cite this court to any other regulations which might have created an expectation of reemployment. While plaintiff may have had a personal expectancy of continued employment, a subjective, unilateral expectancy does not constitute a constitutionally protected property interest. Board of Regents v. Roth, supra.
III.
Turning now to the issue of the existence of a liberty interest, we note that the United States Supreme Court in Roth indicated that where a person’s good name, reputation, honor and integrity are at stake, *367 the impugning of which would have a substantial adverse effect on the individual’s opportunities for future employment, a liberty interest attaches. Initially, we point out that except as they might have been made public in the course of this litigation at the instance of plaintiff, the documents and other evidence linking the decision not to rehire plaintiff with the fact of his physical disability have not been disclosed to the public or prospective employers by the school and, in fact, such disclosure of the documents is forbidden by Colorado law. Section 24-72-204(3)(a)(II), C.R.S. 1973. The mere decision not to rehire, without any broadcast of aspersions or accusations, cannot be held to impugn or infringe any liberty interest which plaintiff might have. Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).
More importantly, however, we find the factual situation here to be far less compelling than those cases cited by plaintiff where termination involved allegations of mental illness and persistent insubordination. See Morris v. Board of Education, 401 F.Supp. 188 (D.Del. 1975); Lombard v. Board of Education of the City of New York, 502 F.2d 631 (2nd Cir. 1974). We cannot find that, as a matter of law, the nonre-newal of plaintiff’s contract under the circumstances present here has had such a stigmatic effect.
The decision of the district court is affirmed.

 Paragraph 15 of the stipulated statement of facts reads: “At all times relevant hereto, the Colorado School of Mines had no formal, de jure tenure system for any members of the faculty, regardless of rank.”

Paragraph 16 of the stipulated statement of facts provides: “The faculty handbook for the Colorado School of Mines, in force at all times relevant hereto, prescribed specified periods of time at a particular teaching grade or level within which faculty members were expected to advance on to the next higher level and also prescribed that faculty members would not be given preference for academic leave prior to the completion of a set period of service.”