Linda **WHEELER**, Plaintiff-Appellee, Cross-Appellant,

v.

**MENTAL HEALTH AND MENTAL RETARDATION AUTHORITY OF HARRIS COUNTY, TEXAS, etc., et al.,** Defendants,

**Mental Health and Mental Retardation Authority of Harris County, Texas, etc., Eugene Williams, etc. and Bill Powers, etc., Defendants-Appellants, Cross-Appellees.**

No. 83–2586.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 1985.

Rehearing Denied March 11, 1985.

David T. Lopez & Associates, David T. Lopez, Houston, Tex., for plaintiff-appellee, cross-appellant.

Before JOHNSON, JOLLY and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal is from a jury verdict awarding nearly $100,000 in damages and attorney's fees to the plaintiff, Linda Wheeler, on the grounds that some of the defendants violated her right to procedural due process when she was fired from her job with Mental Health and Mental Retardation Authority of Harris County, Texas (MHMRA). We affirm in part, reverse in part, and remand.

### I.

Wheeler was Unit Director of the Bayshore Unit of MHMRA which operated as a day hospital providing mental health services when her employment was terminated. According to Wheeler, the events leading to her dismissal began in about February of 1977, when she criticized the recently hired Personnel Director, Bill Powers, at a meeting with other unit directors. Later that same year, she opposed a contract with the Baylor College of Medicine for the provision of psychiatric services, considering it wasteful. In March of 1978, she complained that the compensation plan of a particular department head was not proper. She later complained to Robert Navarro, a MHMRA director, asserting that the compensation plan violated certain rules of the Texas Commissioner of Mental Health. She also complained about the plan in an anonymous letter to the Chairman of the Board of Directors, T.S. Hancock.

It seems, however, that all things were not going well in Wheeler's own unit. Three former employees complained that Wheeler had been engaging in unfair employment practices, and on July 13 Powers

Reynolds, Allen & Cook, Inc., P.J. Murphey Harmon, Houston, Tex., for defendants-appellants, cross-appellees.

began an investigation of her unit. On July 27, pending further investigation, he suspended her, which Wheeler contends was in retaliation for her outspokenness.

After completing the investigation, Powers called a meeting of Wheeler and other employees in her unit. Before the meeting began, a union representative, whom Wheeler had asked to attend, raised procedural questions and the meeting was adjourned until the following day. The next day, August 4, the meeting was reconvened and Powers announced that he wished to discuss with Wheeler alone certain allegations that had been raised during his investigation. The union representative advised Wheeler that she did not have to respond to questions unless they were in writing. After the representative left the room, Powers stated the allegations while Wheeler wrote them down on paper. When Wheeler refused to respond to them, Powers discharged her.

On August 16, Wheeler received a three-page letter dated August 11, from MHMRA Executive Director, Eugene Williams, stating the reasons why she had been dismissed. One of the allegations contained in the letter was that Wheeler had removed a controlled substance, Tranxene, from her workplace without authorization, and in violation of law and MHMRA policies. No such charge had been made on August 4 apparently because the meeting ended abruptly. Wheeler appealed pursuant to agency rules and met with Williams; each was accompanied by an attorney. Williams affirmed his prior decision to dismiss Wheeler.

Wheeler then appealed her dismissal to the Board of Directors as provided by agency rules. The parties agreed that only the charge of the drug theft would be considered on this appeal because it was the most serious. At this appeal, heard on September 27, 1978 before three Board members (T.S. Hancock, Robert Navarro, and Joseph L. Bart), Wheeler was represented by an attorney and was given the opportunity to testify, present witnesses, and cross-examine adverse witnesses. Although the hearing was supposed to be limited to the drug-theft charge, Wheeler argued to the Board that Powers and Williams had dismissed her for exercising her freedom of expression. Wheeler also insisted that she intended no harm but took the Tranxene from MHMRA for her mother's use. She explained that her sick mother had a prescription for the drug but could not afford to purchase it and that she took only outdated drugs, which were marked for disposal. The Board members, unpersuaded, upheld the prior decision of dismissal.

Having failed in her efforts to gain reinstatement from MHMRA directors, Wheeler brought suit in district court under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, alleging that her dismissal violated her first amendment rights and her right to substantive and procedural due process under the fifth and fourteenth amendments.[1] Wheeler named MHMRA and Williams, Powers, Hancock, Navarro, and Bart in their individual and official capacities as defendants in the suit. At the close of the defendant's case, the district court directed a verdict against Wheeler on her claims under sections 1985 and 1986. On the issues submitted to it, the jury returned a verdict finding that Powers and Williams had deprived Wheeler of the procedural safeguards set forth in the MHMRA handbook, and had it not been for that deprivation, she would not have been dismissed. The jury found, however, that the Board Members did not violate the MHMRA handbook provisions and that none of the defendants violated either Wheeler's first amendment rights or her right to procedural due process guaranteed by the Constitution.

Actual damages were assessed against MHMRA, Powers and Williams in the amount of $65,000. The jury also assessed

---

1. At trial the parties stipulated that Wheeler was a non-probationary employee of the Mental Health Mental Retardation Authority of Harris County, Texas, and as such, had an expectation of continued employment that could be terminated only for cause.

$4,000 and $1,000 in punitive damages against Powers and Williams respectively. The district court entered final judgment and awarded Wheeler attorney's fees of $25,937.50 with interest to be recovered from MHMRA. All parties appeal the jury verdict.

## II.

The questions raised on this appeal primarily involve an examination of the jury's answers to several special interrogatories. We are specifically concerned with three of the interrogatories posing whether procedural due process was violated and whether such violation led to Wheeler's dismissal. Interrogatory number one concerned procedural due process guaranteed by the Constitution while interrogatories four and five concerned procedures guaranteed by the MHMRA handbook. The relevant interrogatories and answers are:

Special Interrogatory No. 1

Do you find from a preponderance of the evidence that defendants failed to afford plaintiff the procedures required by due process in their decision to terminate plaintiff's employment?

Answer: No as to all defendants.

Special Interrogatory No. 4

Do you find from a preponderance of the evidence that defendants failed to comply with the applicable policies and procedures for dismissal when they decided to terminate plaintiff's employment?

Answer: Yes as to Powers and Williams; No as to the Board members.

If you have answered "yes" to Special Interrogatory No. 4 as to any defendant, proceed to answer Special Interrogatory No. 5.

Special Interrogatory No. 5

With regard to plaintiff's claim that she had a protectable property interest in applicable policies and procedures, do you find from a preponderance of the evidence that plaintiff would have been terminated from her employment if defendants had followed the applicable policies and procedures?

Answer: No.

## III.

### A.

█ The first issue we address is whether the district court erred in denying Wheeler's motion for judgment notwithstanding the verdict on the issue of procedural due process guaranteed by the fourteenth amendment. Wheeler asserts that since she was a nonprobationary employee who may be dismissed only for good cause, she was constitutionally entitled to notice of the charges against her and an opportunity to be heard prior to dismissal. Wheeler notes that the jury was orally instructed to find whether she had been granted due process before she was "finally terminated," and asserts that the phrase "final termination" relieved the defendants from showing that risk-reducing procedures had been taken before her dismissal. Additionally, Wheeler argues that the district court erred by not requiring the jury to determine whether procedural due process was followed *prior* to her discharge. We agree that the district court did not properly instruct the jury on the law of procedural due process in this circuit.

In *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978), this court defined the minimum pre-termination procedural elements required by the due process clause of the fourteenth amendment. We stated:

Where a governmental employer chooses to postpone the opportunity of a nonprobationary employee to secure a full-evidentiary hearing until after the dismissal, risk reducing procedures must be accorded. These must include, prior to termination, written notice of the reasons for termination and an effective opportunity to rebut those reasons. Effective rebuttal must give the employee the right to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decisions.

531 F.2d at 1273 (footnotes omitted). More recently we reaffirmed the general rule that to establish a denial of due process the plaintiff must show that prior to his discharge he did not receive written notice of the reasons for dismissal and an opportunity to respond in writing to those reasons. *Bueno v. City of Donna*, 714 F.2d 484, 493 (5th Cir.1983); *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 182 (5th Cir.1983); *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir.1980).

Here, the record clearly reflects that Wheeler was dismissed when she refused to answer questions of Powers at her initial meeting with him. At that time Wheeler had not received prior written notice of the reasons for her discharge. In reviewing the district court's denial of Wheeler's motion for judgment notwithstanding the verdict, we apply our long-standing standard enunciated in *Boeing v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc), to determine whether, when viewing the evidence in the light most favorable to the party opposing the motion, "reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 374. Applying this standard, we hold that the jury could not have reasonably concluded with respect to the August 4 meeting that Wheeler received *prior* written notice of the reasons for her dismissal or that she had the opportunity to respond in writing

to the charges. Accordingly, we reverse and remand. On remand the trial court will enter judgment against Powers and Williams individually and in their official capacities and against MHMRA for denial of procedural due process under the fourteenth amendment. It is clear from our discussion here that Powers is liable; the record reflects that Williams admitted that Powers acted pursuant to his express instructions and with his full authorization. The record does not reflect that anyone other than these defendants violated Wheeler's fourteenth amendment rights. The record and jury verdict both support the finding that Wheeler was afforded procedural due process in the September 27 meeting before MHMRA directors. Indeed, the constitutionality of that meeting is not contested on appeal.

### B.

■ The defendants contend that there is no evidence to support the jury's finding in Special Interrogatory No. 4 that Powers and Williams violated the policies or procedures of MHMRA.[2] Wheeler contended before the jury, and continues to argue on appeal, that Powers and Williams violated the policies and procedures by failing to give her written notice of the charges before dismissing her.[3] The defendants argue, on the other hand, that the MHMRA

---

2. The parties stipulated during trial that Wheeler had a protected property interest in the policies and procedures of the MHMRA and the MHMRA was required to follow these procedures when dismissing an employee.

3. Wheeler also argued to the jury that the defendants did not follow MHMRA rules and regulations because she was disciplined through Powers, the personnel director, rather than through her "supervisor," and, second, that Williams sent selective materials, instead of all materials, concerning her dismissal to the directors that heard her appeal. Both of these incidental arguments are meritless.

The procedures require that *a* supervisor, which Powers clearly was, deal with the employee concerning disciplinary action. With respect to the second argument, the procedures provide that the trustees "shall receive copies of all signed material previously presented in the procedure; no evidence or complaint shall be

added during this step that has not been previously heard and discussed by all parties concerned." Here no evidence or complaint not heard by Wheeler was presented to the directors.

It is further argued, as an afterthought, that the regulations (providing for fair and equal treatment of employees) were not generally followed because another MHMRA employee illegally possessing controlled substances was not investigated. There was some testimony that before the Wheeler incident another employee was arrested off premises for possession of a controlled substance. He was criminally prosecuted and consequently there was no MHMRA investigation conducted, such as in Wheeler's case. Not only is the incident too dissimilar for comparison, but no evidence showed that the incident was known to Powers and Williams at the time of the Wheeler investigation.

handbook does not require such notice. The handbook provides in relevant part:

*Discipline Procedure*

When it appears to a supervisor that an employee's conduct warrants disciplinary action, he/she will advise the employee promptly of the situation and the facts. The employee will be given an opportunity to present any mitigating information or circumstances. The employee shall be given an opportunity to state his/her position.

Disciplinary *action* shall be in written form and shall be read to, or read by, the employee. The employee shall by his or her signature acknowledge receipt of the disciplinary *action*. (Emphasis added.)

Here, in compliance with the discipline procedure, Wheeler was promptly advised of the situation and facts. She was given the opportunity to state her position and present any mitigating information or circumstances at the August 4 meeting, but instead chose to remain silent. The record also reflects that Wheeler was discharged at this meeting and that she had not received prior written notice of the charges. The MHMRA handbook, however, does not require prior written notice of charges against an employee, but rather requires notice of disciplinary *action*. The plain unambiguous meaning of this provision does not suggest that the employee be given prior written notice of the charges before disciplinary action is taken.[4] In this case Williams gave Wheeler written notice of the disciplinary action on August 16, 1978, clearly setting forth the reasons for her dismissal. We hold, therefore, that the

jury could not have reasonably found that the defendants failed to comply with the MHMRA handbook policies or procedures.[5] We therefore vacate that portion of the jury verdict finding Powers and Williams liable for violating MHMRA procedures. On remand, the district court is ordered to enter judgment for these defendants on this issue.

### C.

 Wheeler also argues that she is entitled to equitable relief notwithstanding the verdict on her first amendment claim. Citing *Schneider v. City of Atlanta*, 628 F.2d 915, 918–19 (5th Cir.1980), she contends that whether an employee is discharged because of her protected conduct is ultimately a question of law that was improperly submitted to the jury. Wheeler's reliance upon *Schneider* is simply misplaced. Once the court determines as a matter of law that certain speech or conduct is protected, it is "a question of fact whether she was constructively discharged because of it." *Id.* at 918–20; *see also Bowen v. Watkins*, 669 F.2d 979, 984 (5th Cir.1982); *Bickel v. Burkhart*, 632 F.2d 1251, 1255 n. 7 (5th Cir.1980). Here the district court properly determined that Wheeler's speech was protected and allowed the jury to determine whether she was discharged because of it. In view of the substantial evidence, including her own admission, that she took a controlled substance in violation of MHMRA rules, we decline to overturn the jury's finding that

---

4. Wheeler contends that Powers admitted on cross-examination that MHMRA procedures require that written notice of charges be given to an employee prior to dismissal. Irrespective of whether this "admission" was deliberate or inadvertent, it contravenes the plain meaning of the handbook provision. We are unwilling to say that the interpretation of an MHMRA employee can change the plain language of published and established MHMRA procedures and rules. In fact, such is not Wheeler's contention. She argues only that this "admission" is consistent with the language of the handbook itself— an argument we reject.

5. Assuming there was evidence that Powers and Williams violated the procedures of MHMRA, we would arrive at no different practical result from the one our decision here provides. Since we are remanding for a new trial on damages arising from the defendants' failure to provide "risk-reducing" procedures in the August 4 meeting, Wheeler's damages will be the same. Irrespective of whether Powers and Williams are liable for failing to afford risk-reducing procedures or failing to follow MHMRA procedures, Wheeler may recover only for pain, suffering, humiliation and incidental damages *resulting from procedural denials* at her August 4 dismissal.

her discharge was not motivated by her protected conduct or speech.

## IV.

The defendants appeal the award of $65,000 in actual damages to Wheeler. Of the $65,000 award, Wheeler concedes that $56,000 represents the amount of pay lost as a result of her dismissal.[6] The defendants contend that the damage award should have been reduced by the amount representing lost wages because such damages are improper when a procedural due process deprivation, as here, is later cured by a procedurally proper hearing. Wheeler concedes that awards of back pay are prohibited when the defendant proves that the plaintiff would have been dismissed even if procedural due process had been afforded; but she further contends that the loss of back pay is a proper element of damages in this case because the jury found, in Special Interrogatory No. 5, that she would not have been dismissed absent the procedural due process deprivation in failing to follow MHMRA procedures.

Wheeler could not have been dismissed as a result of any violation of MHMRA procedures because no MHMRA procedures were violated. The entire award of damages, including punitive damages against Powers and Williams, being based upon this jury finding, is therefore vacated.[7]

It is arguable, however, that absent the violation (which we have found) of constitutional due process rights on August 4, she would not have been summarily dismissed on that occasion. We examine therefore whether on remand loss of back pay may be recovered from August 4 until the violation was cured. To recover for a violation of procedural due process the plaintiff must present evidence that she has incurred actual compensatory damages flowing from the loss of procedural rights. *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 182 (5th Cir.1983); *Wilson v. Taylor*, 658 F.2d 1021, 1023 (5th Cir.1981); *see also Carey v. Piphus*, 435 U.S. 247, 248, 98 S.Ct. 1042, 1044, 55 L.Ed.2d 252 (1978). When, however, a constitutionally infirm pretermination procedure is cured by proper post-termination procedures, damages can be awarded only during the period between dismissal and the date of the post-termination procedures. *Wilson v. Taylor*, 658 F.2d at 1035; *Glenn v. Newman*, 614 F.2d 467, 472–73 (5th Cir.1980). Here the record clearly reflects that Wheeler received a hearing before MHMRA Board members that afforded her the full protection of procedural due process. Wheeler therefore may recover only the actual damage incurred from the time of her discharge until the time of the procedurally proper post-termination hearing.

---

**6.** The apparent contradiction of the award of $65,000 in actual damages for what the jury perceived to be a violation of procedural rights under the MHMRA handbook, coupled with its finding that Wheeler's rights were not violated by her dismissal by the directors, is explained by the understandable confusion of the jury as to appropriate damages for a procedural violation later cured by the Board action. In addressing the jury, the plaintiff argued that if her rights were violated, she was entitled to recover, at a minimum, $56,000 for lost wages. The defendants, in arguing to the jury, stated that they had no quarrel with the figure of $56,000 if the jury found for the plaintiff. The court instructed the jury on damages generally, but refused to give a specific instruction on appropriate damages arising from a denial of procedural due process only. The jury simply believed that it was authorized to award $56,000 as lost wages

for a procedural violation, regardless of whether the violation was cured.

**7.** Even if MHMRA procedures were violated, an award of $56,000 representing back pay from the date of dismissal until the time of trial, would not be warranted. Since the jury found that only Powers and Williams violated MHMRA procedures, the finding in Special Interrogatory No. 5 that Wheeler would not have been dismissed absent procedural defects applies only to the August 4 dismissal. Special Interrogatories Nos. 4 and 5 read together indicate that had Powers and Williams afforded Wheeler MHMRA procedures, she would not have initially been dismissed. Since the board members did not violate MHMRA procedures, any loss of back pay occurring after the board's action on September 27 could not have resulted from the August 4 procedural violation.

■ The question remains, however, whether Wheeler may recover back pay as an element of those damages. In *Wilson v. Taylor* we held, as a general proposition, that back pay is not recoverable simply for violations of procedural due process when there is a cure of the due process deprivation. 658 F.2d at 1035. We noted that our decision in *Glenn v. Newman* allowed an award of back pay as damages for a procedural due process violation but we also carefully explained that *Glenn v. Newman* was not controlling on this issue because it did not consider the Supreme Court's precedent in *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).[8]

In *Carey* the Court held that certain students who had been suspended from school without being afforded procedural due process were not necessarily entitled to recover the pecuniary value of each missed school day. 435 U.S. at 260, 98 S.Ct. at 1050. The Court set forth the underlying rationale for its decision by stating:

> In this case, the Court of Appeals held that if petitioners can prove on remand that "[the students] would have been suspended even if a proper hearing had been held," 545 F.2d at 32, then [the students] will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. [Citations omitted] The court suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to [the students]. [Citations omitted] We do not understand the par-

ties to disagree with this conclusion. Nor do we.

*Id.*

The *Wilson* court analogized the students' loss of time in *Carey* to loss of back pay and held that back pay as an element of damages is precluded when the defendant can prove that the plaintiff would have been dismissed absent the procedural due process violation. 658 F.2d at 1033–35. Indeed, this court, in a case decided after *Wilson,* again recognized the underlying rationale in *Carey* and noted that other circuits have held that back pay is not recoverable when the employer can show that the discharge would still have occurred absent procedural defects. *See Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 729–30 (5th Cir.1982) (citing *Kendall v. Board of Education of Memphis City,* 627 F.2d 1, 6 (6th Cir.1980); *Burt v. Abel,* 585 F.2d 613, 616 (4th Cir. 1978)); *see also Conley v. Board of Trustees of Grenada County Hospital,* 707 F.2d 175, 182 (5th Cir.1983). Here it is clear that Wheeler's lawful dismissal would ultimately have occurred absent procedural defects, not only because reasons to support the termination were sufficient and lawful and found by the jury to be nonpretextual, but also because there were no procedural defects in the September 27 hearing at which she was finally discharged.[9]

It is not certain, however, that Wheeler's initial dismissal would have occurred absent procedural defects. We must remand for that determination. If the defendants can prove that Wheeler would have been dismissed on August 4 absent procedural defects, then she will not be entitled to recover for lost back pay. If, however, the defendants fail to prove that Wheeler would have been dismissed on August 4

8. We are also aware that back pay was awarded for a procedural due process violation in *Zimmerer v. Spencer,* 485 F.2d 176, 179 (5th Cir. 1973). The Supreme Court in *Carey,* however, disapproved of that aspect of *Zimmerer.* 435 U.S. 247, 260 & n. 15, 98 S.Ct. 1042, 1050 & n. 15, 55 L.Ed.2d 252 (1978); *see also Wilson v. Taylor,* 658 F.2d 1021, 1033–34 (5th Cir.1981).

9. Because the pretermination due process violation was cured by the September 27 hearing, and because the propriety of Wheeler's dismissal is fully supported in the record, she is not entitled to reinstatement. *See Glenn v. Newman,* 614 F.2d 467, 473 & n. 6 (5th Cir.1980); *Zimmerer v. Spencer,* 485 F.2d 176, 179 (5th Cir.1973).

absent procedural defects, Wheeler will be entitled to back pay from August 4 until September 27. In that case, the procedural due process violation could properly be viewed as the cause of the initial discharge and the award of back pay would constitute compensation to Wheeler rather than a windfall.

We therefore vacate the jury's award of damages and remand for further proceedings on the damage issue. On remand the district court will instruct the jury to award actual damages including back pay until September 27 if it finds that Wheeler would not have been discharged on August 4 absent the procedural due process violation. Damages representing loss of back pay or lost benefits may not be recovered if the jury finds that Wheeler would have been discharged on August 4 absent procedural defects. Irrespective whether Wheeler would have been discharged on August 4 absent procedural defects, she may recover damages for mental or emotional distress *flowing from the loss of her procedural rights.* Those damages, however, must be proved; they will not be presumed. *Carey,* 435 U.S. at 262, 98 S.Ct. at 1051; *Russell v. Harrison,* 736 F.2d 283, 291 n. 17 (5th Cir.1984); *Wilson,* 658 F.2d at 1032–33.

## V.

■ MHMRA contends that suit against it was barred by the eleventh amendment. To determine whether the eleventh amendment bars this particular action, we must examine MHMRA and its powers and characteristics as created by state law. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977); *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir. 1982); *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 557 (5th Cir.1982). The degree of local autonomy and control is a consideration, but more important is whether the funds to defray any award would be derived from the state treasury. *Laje,* 665 F.2d at 727; *Moore v. Tangipa-*

*hoa Parish School Board,* 594 F.2d 489, 493 (5th Cir.1979); *Campbell v. Gadsden County District School Board,* 534 F.2d 650, 656 (5th Cir.1976).

■ In applying these principles to the facts in this case, we hold that the district court did not err in rejecting MHMRA's claim of eleventh amendment immunity. MHMRA was created pursuant to state law, and in any given year a substantial part of its funds—up to two-thirds according to Williams—is appropriated by the state legislature. The record, however, is silent as to whether any of these funds would be used to pay the judgment. The mere existence of significant legislatively appropriated funds does not in and of itself render MHMRA an arm of the state. *See Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 573. The balance of the funds to support MHMRA is appropriated by the county through the Harris County Commissioners Court and the state money MHMRA receives is in the form of grants-in-aid, subject to control by the Board of Directors who are appointed by the Commissioners Court. Tex.Rev.Civ.Stat.Ann. art. 5547–203, –204 (Supp.1984). MHMRA is authorized to acquire real and personal property by purchase or lease and may construct buildings and facilities. *Id.* art. 5547–203 § 3.11(a). It may accept gifts, grants, and donations of money and property to aid in administering its programs and services, and it is required to charge reasonable fees, to cover costs, for services provided to non-indigent persons. *Id.* art. 5547–203 §§ 3.10, 3.14.

Additionally, the state law that authorizes mental health and mental retardation centers provides that only a local entity such as a municipality, school district or county can, in fact, create an agency. *Id.* art. 5547–203 § 3.01(a). Here, MHMRA was created by the Harris County Commissioners Court. Thus, rather than being established by the legislature, MHMRA was created by local initiative. *See United Carolina Bank,* 665 F.2d at 558.

On balance, the record before us indicates MHMRA is more like a county or city

than an arm of the state. *See Mt. Healthy,* 429 U.S. at 280, 97 S.Ct. at 573. The relationship between it and the state is simply too attenuated, on the record before us, to support an extension of eleventh amendment immunity in this case. *See Laje,* 665 F.2d at 727. We note in conclusion that MHMRA would be immune from suit if payment of the judgment were to be made directly from the state treasury. The record, however, does not reveal that payment would be made from the state treasury or that payment would interfere with the state's fiscal autonomy. *See United Carolina Bank,* 665 F.2d at 560.

### VI.

■ Finally, Wheeler contests the adequacy of the district court's award of reasonable attorneys' fees to her as a "prevailing party" pursuant to 42 U.S.C. § 1988. The adequacy of an award of reasonable attorneys' fees rests within the sound discretion of the trial court. *Hart v. Walker,* 720 F.2d 1436, 1442 (5th Cir.1983); *Mitchell v. M.D. Anderson Hospital,* 679 F.2d 88, 92 (5th Cir.1982). In exercising this discretion, however, the trial court must apply the criteria set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 719 (5th Cir.1974). These criteria include a consideration of the customary fee of the plaintiff's attorney and fee awards in similar cases. Of the *Johnson* factors, the attorney's "customary fee" is one that deserves special attention. *Copper Liquor, Inc. v. Adolph Coors, Inc.,* 684 F.2d 1087, 1089, 1092 (5th Cir.1982).

■ Here, counsel's expertise, ability, and the effort expended in prosecuting this section 1983 action are granted. Our task, however, is to determine whether the district court granted an appropriate hourly rate for those services. To determine a reasonable hourly rate, the burden is on Wheeler to produce satisfactory evidence, in addition to her attorney's affidavit, that the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputa-

tion. *Blum v. Stenson,* —— U.S. ——, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984). Here, Wheeler submitted the affidavit of her attorney that stated he usually charged $150 an hour for similar work. Wheeler further directed the court's attention to fee awards in the Southern District of Texas based upon hourly rates in line with those requested by her attorney.

■ The district court in awarding a $75 an hour fee, however, relied primarily upon cases from non-metropolitan areas. In the only case from a large urban area cited by the district court, the parties had stipulated to an hourly rate of $55 for services rendered in 1976 and 1977. There certainly appear to be cases arising from the Houston metropolitan area and similar areas more relevant than the cases on which the district court relied. *See, e.g., Chescheir v. Liberty Mutual Insurance Co.,* 713 F.2d 1142, 1150 n. 3 (5th Cir.1983) ($150 an hour upheld on appeal for Houston attorney in employment discrimination case). In fact, the defendants conceded at oral argument that the $75 an hour rate awarded by the district court was too low and that an hourly rate of $90 to $190 would be more appropriate.

■ Next Wheeler contends that the district court abused its discretion in failing to enhance the lodestar amount based upon the contingent nature of the case. We disagree. A trial court is not required to enhance an award because of the contingent nature of the case; it "need only *consider* the fact that a case was taken on a contingent basis." *Hart v. Walker,* 720 F.2d 1436, 1442 (5th Cir.1983) (emphasis in original). Here the district court expressly considered the contingent nature of the case but declined to enhance the award on that basis. In so doing, the court did not abuse its discretion.

■ Wheeler also contends that the district court erred in deducting $2,000 from the award, representing the amount she paid to her attorney prior to trial. She argues that since her counsel had agreed to reimburse her from the fee award the

court should not have deducted this amount from its final assessment. In resolving this issue, we simply note that neither Wheeler nor Wheeler's attorney should be penalized for the advance payment. Indeed, at oral argument the defendants could not offer justification for the district court's action, nor can we find any. We thus hold that the court erred in reducing the fee award by $2,000.

Finally, we note that our decision today, and the result of retrial on the remanded issues, may substantially affect the amount of an appropriate award, and it seems certain to us that the district court will find it necessary to completely reconsider an award of attorney's fees once a final judgment on remand has been entered. If an award of attorney's fees becomes appropriate, the district court should redetermine the hourly rate in the light of our finding that a $75 hourly rate is too low. We express no opinion, however, concerning the appropriate rate; we leave that decision to the sound discretion of the trial court, consistent with this opinion.

### VII.

In conclusion, we affirm the jury's finding of no violation of Wheeler's first amendment rights. Furthermore, there is no evidence that Powers and Williams violated MHMRA procedures, and we therefore reverse and render judgment for them on this issue. The record clearly indicates, however, that Powers, Williams and MHMRA failed to afford Wheeler the required risk-reducing procedures prior to her dismissal and thus violated her fourteenth amendment rights. Accordingly, we reverse the jury's finding in this respect and remand for entry of judgment on liability and for a new trial on damages. On remand Wheeler will be entitled to actual damages, if any, and punitive damages, if appropriate (on which we imply no opinion), flowing from the procedural due process deprivation suffered on August 4 until September 27, the date of the procedurally proper hearing. Actual damages may include damages for mental and emotional distress. Loss of pay from August 4 to September 27 may be recovered if the jury determines that Wheeler would not initially have been dismissed absent the procedural due process violation. This case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.